INHABITANTS OF WAYLAND *vs.* INHABITANTS OF WARE.

The St. of 1865, *c.* 230, § 1, gives a settlement to a soldier credited to the quota of a town in conformity with its terms, even if he was credited in excess of the proportion due from the town at the time of such credit.

On a trial of the issue whether a soldier gained a settlement in a town under the St. of 1865, *c.* 230, § 1, the facts that calls for troops were made by the President, and quotas assigned to all the towns in the Commonwealth, during the civil war, are to be assumed without express evidence.

On a trial of the issue whether a soldier, enlisted and mustered before the assignment of quotas to towns during the civil war, gained a settlement, under the St. of 1865, *c.* 230, § 1, in a particular town, by being credited to its quota when assigned, the fact that he was so credited may be proved independently of any record of the provost marshal or war department of the United States.

On the trial of an action for supporting as a pauper a discharged soldier who is alleged to have a settlement in the defendant town under the St. of 1865, *c.* 230, § 1, if the number of enlistments to the credit of the town at the time of the assignment of its quota is

Wayland *v.* Ware.

ascertained, evidence that the same number of soldiers, including the man in question, had previously enlisted therefrom as volunteers, or were claimed by the town as having so enlisted, in adjusting its quota with the officer having the duty of assignment, is competent, and, if uncontrolled, sufficient, evidence to prove that the man was credited to the quota of the town.

On the issue whether a soldier was credited to the quota of a town so that he gained a settlement in it under the St. of 1865, *c.* 230, § 1, testimony of a person who was adjutant general of the Commonwealth during the civil war, that a certain table prepared by him in 1862 assigning quotas to towns was never allowed by the war department of the United States till after 1864, but he understood that it was so allowed afterwards, though he had no personal knowledge of the fact, is incompetent, as being mere hearsay.

The record kept by a town clerk, under the Sts. of 1863, *cc.* 65, 229, of the soldiers who composed his town's quota of the troops furnished by the Commonwealth to the United States during the civil war, is competent, though not conclusive, evidence of facts which it is required to contain.

The disability of a soldier from wounds or disease contracted while he was engaged in the military service of the United States during the civil war, intended by the St. of 1865, *c.* 230, § 1, to give him a settlement in the town to whose quota he belonged, is such a disability, and such only, as terminated his military service within one year from his enlistment.

CONTRACT for expenses incurred in supporting as a pauper a minor child of James Davis, Jr. The question at issue was whether the St. of 1865, *c.* 230, gave Davis a settlement with the defendants.

At the trial in the superior court at June term 1869, before *Putnam,* J., after the decision reported 97 Mass. 391 note, it was admitted that the settlement of Davis was with the plaintiffs, unless it was changed by § 1 of that statute, which provides that any inhabitant of a town in which he had resided for six months next previous to his muster into the military or naval service of the United States "as a part of the quota" of the town under any call of the President during the civil war, if he was of full age at the time of his enlistment, and continued in the service for a year or more, or died or became "disabled from wounds or disease received or contracted" while in the service, should be deemed to have acquired a settlement in that town.

"It was also admitted or proved that Davis was enlisted and mustered into the military service of the United States January 29, 1862; that he resided in Ware for more than six months previous to that time; and that he was discharged from said service on account of disability April 11, 1862. There was evidence tending to prove that he was disabled by disease contracted

while engaged in such service; and also evidence tending to
show that he was not so disabled, but that, if he was disabled
by disease, it was contracted, and he was disabled thereby, long
before he entered said service; and there was evidence tending
to show that before his military service he was able to perform
more labor than an ordinary laborer, (which was his employ-
ment,) and that since his discharge from said service he has been
able to perform as much labor as before.

" To prove that Davis was credited to Ware as a part of its
military quota, the plaintiffs offered in evidence the following
documents, the genuineness of which was not disputed. The
defendants objected to the admission of each of them; but the
judge admitted them all, and they were read to the jury : 1. The
original muster roll; on which the name of James Davis, Jr.,
appears. 2. The list of soldiers claimed by the selectmen of
Ware in 1862 in a return to the adjutant general's office; in
which the name of James Davis, Jr., appears. 3. The record
made up by the town clerk of Ware under the Sts. of 1863,
*cc.* 65, 229 ;* in which the name of James Davis, Jr., appears.
4. The new enrolment made under the order of the President,
dated August 4, 1862; in which the name of James Davis, Jr.,
appears. 5. The table made by Adjutant General William
Schouler in 1862, assigning quotas to towns in numbers and no
names."

" General Schouler, who was adjutant general of the Com-
monwealth from before the war till early in 1866, was offered
by the plaintiffs as a witness, and (the defendants objecting)
was permitted to testify, and did testify, that he took said mus-
ter roll (No. 1), and said list of soldiers (No. 2), and therefrom
in said table (No. 5), in 1862, allowed said Davis, though not
by name, as a credit to Ware as a part of its quota; that is,
that said list (No. 2) showed that Ware then in 1862 had fur-
nished six more men than its share, and that in said table (No.

---

* These statutes provided that every town clerk should make and keep in
his office, as part of the town archives, a full and complete record of the names
of, and certain other facts concerning, "all the soldiers and officers who com-
posed the town's quota of the troops furnished by the Commonwealth to the
United States during the present rebellion."

5) he in 1862 assigned to Ware six men less than Ware other-wise would have been required to furnish; that this table (No. 5) was never allowed by the war department till after the year 1864, but he understood that they afterwards allowed it in as-signing quotas to towns, but that he had no personal knowledge thereof.  The defendants objected to all and every part of this evidence; but the judge admitted it all."

" There was no documentary or other evidence assigning any quotas to towns other than as aforesaid ; and it appeared that after 1862 whatever assignments of quotas were made, if any, were made by the war department of the United States, under the direction of the provost marshal of the United States, and not by the Commonwealth ; and there was no evidence of what said assignments were, or on what basis they were made by the provost marshal, or what credits were given them, unless the evidence of General Schouler aforesaid was competent to be considered thereon.

" There was no other evidence in the case that Davis was ever credited or allowed as a part of the quota of Ware under any call of the President during the civil war.   The defendants asked the judge to instruct the jury that there was no compe-tent evidence that Davis was ever credited or allowed as part of the quota of Ware; and that said documents could not be considered by them as evidence that he was so credited and allowed.   The judge refused so to instruct the jury, but did instruct them that each and all said documents could be consid-ered by them as such evidence, and that the same, together with General Schouler's testimony aforesaid, were competent evi-dence from which they might find that Davis was credited and allowed as part of the quota of Ware under some call of the President within the meaning of the statute.   The judge fur-ther instructed the jury that the disability under said statute meant such disability from disease contracted while engaged in said military service as disabled the soldier from performing fur-ther military duty."   The jury returned a verdict for the plain-tiffs, and the defendants alleged exceptions.

*D. S. Richardson & F. D. Richards*, for the defendants.

*G. A. Somerby*, (*W. N. Mason* with him,) for the plaintiffs.

WELLS, J. It is not controverted that James Davis, Jr., was duly enlisted and mustered into the military service of the United States during the recent civil war; and that he was at the time such a resident of Ware as to bring him within the operation of the Massachusetts statute of 1865, *c.* 230, § 1, provided he did in fact constitute a part of the quota of that town.

The act of Congress of 1863, *c.* 75, provided for enrolling and calling out the national forces; establishing enrollment districts and subdistricts; and assigning to the districts the number of men to be furnished therefrom, taking into consideration the number of volunteers and militia already furnished, so as " to equalize the numbers among the districts of the several states, considering and allowing for the numbers already furnished as aforesaid, and the time of their service."

The act of 1864, *c.* 13, § 2, provided that the quota of each ward of a city, town, &c., " shall be, as nearly as possible, in proportion to the number of men resident therein liable to render military service, taking into account, as far as practicable, the number which has been previously furnished therefrom."

Under these several statutes, it was held in *Bridgewater* v. *Plymouth*, 97 Mass. 382, that any one who, having previously enlisted as a volunteer, although discharged for disability, was taken into account in the subsequent assignment of its quota to the town from which he enlisted, was to be considered to have served as a part of the quota of that town.

It would make no difference if the number of volunteers exceeded the proportion due from the town, up to the time of assigning quotas; because that excess, being carried to the credit of the town, would reduce by the same number the quota to be assigned. Nor would an excess in the number subsequently furnished affect the consequences of the credit so given. If the credit was due to the town, it must be taken to have been allowed as of the time when due, although the formal adjustment or verification took place later.

That calls were made and quotas assigned to all towns, including the town of Ware, need not be proved by documentary

or other evidence, in a case like this. It is a fact of history, recognized and assumed by the very terms of the statute of 1865. The fact to be established, about which the difficulty arises in this case, is, that James Davis, Jr., was credited to the town of Ware in any assignment of its quota by the provost marshal.

The defendants contend that that fact can only be proved by the record of the provost marshal or war department, and that the evidence resorted to was secondary evidence, admitted without first accounting for the absence of the primary and best evidence. But we do not think that the existence of such a record as this objection supposes is to be presumed. It is not required by the statutes of the United States; nor is it necessarily implied by the nature of the transaction in question.

Even if it were to be assumed that a record exists in the war department, showing not only the quota assigned, but the number and names of volunteers allowed to the credit of the town in assigning that quota, it does not follow that the fact may not be proved by other independent evidence. If the number allowed to the credit of the town were known, or could be ascertained by comparison of its full proportion with the quota actually assigned as still due at any time, evidence that the same number, including Davis, had in fact previously enlisted from the town as volunteers, or had been claimed by the town as having so enlisted, in adjusting its quota with the officer having the duty of assignment in charge, would tend to show, and if uncontrolled would sufficiently show, that Davis was included in the credit given to the town. Such we understand to be the nature of the evidence admitted in this case. It does not bear the relation of secondary evidence to the supposed record of the provost marshal. It is independent evidence, to prove a fact which may exist in and be proved by a record, but which is not necessarily so to be proved.

But to make the chain of evidence thus resorted to complete, it was necessary to give force to a part of the testimony of Adjutant General Schouler, which was not competent as evidence; to wit, that the table of credits made up by him was

never allowed by the war department till after the year 1864 " he understood that they afterwards allowed it in assigning quotas to towns, but he had no personal knowledge thereof." This was the turning point of the case; and the report expressly finds that there was no evidence of what credits were given " unless the evidence of General Schouler aforesaid was competent to be considered thereon." Upon this point it was merely hearsay, and the proof therefore fails. The instructions allowed the jury to consider as competent the whole of the testimony of General Schouler, including this statement upon hearsay.

The record kept in pursuance of the Sts. of 1863, *c.* 65 and *c.* 229, being of the character of a public record, is competent evidence, though, from its nature, not conclusive of the facts it is required to contain. 1 Greenl. Ev. § 556. Stark. Ev. (4th ed.) 289, 404. Its imperfect condition may affect the credit and weight to be given to it, but does not render it inadmissible. *Sprague* v. *Bailey,* 19 Pick. 436.

The ruling and instruction as to what constituted the disability intended by the statute was correct. It must be such disability, and such only, as operates to terminate the service within one year from the enlistment. *Fitchburg* v. *Lunenburg,* 102 Mass. 358.

The admission of hearsay testimony from Adjutant General Schouler, and the instructions to the jury in relation thereto, make a new trial necessary. *Exceptions sustained.*