INHABITANTS OF HANSON *vs.* INHABITANTS OF SOUTH SCIT-
UATE.

Plymouth.   March 7. — June 26, 1874.   WELLS & ENDICOTT, JJ.,
absent.

The town record kept pursuant to the Sts. of 1863, *cc.* 65, 229, of the soldiers who composed the town's quota of the troops furnished by the Commonwealth to the United States, is competent evidence of the enlistment of one of such soldiers and of payment of bounty to him.

A general order of the Governor of the State is competent evidence of a call for troops under an act of Congress, and of the assignment of quotas to the towns under the call.

A certificate of discharge from the military service of the United States is admissible in evidence to show that a soldier was honorably discharged, and indorsements on the certificate, stating that the soldier had deserted, which indorsements were made without the consent of the soldier and after the certificate was delivered to him, will not affect its admissibility.

The entry on the muster roll of a company that a member thereof has deserted is not conclusive evidence of the truth of the charge.

Intentional absence from military service without leave, does not of itself constitute the crime of wilful desertion; there must be in addition the intention not to return to the service.

The "wilful desertion" referred to in the St. of 1865, *c.* 230, § 3, is the "desertion" defined by the Articles of War, U. S. St. 1806, *c.* 20, art. 20.

A certificate from a public officer that certain facts appear from the records of his office, but which does not profess to be a transcript of the record, is not competent evidence of such facts.

CONTRACT to recover for expenses incurred by the plaintiff town in supporting as paupers William O. Thomas and his family, who were alleged, at the time said expenses were incurred, to have had their settlement in the defendant town, under the St. of 1865

*c.* 230.* Trial in the Superior Court before *Pitman,* J., who, after a verdict for the plaintiff, reported the case for the consideration of this court, in substance as follows:

---

* The St. of 1865, *c.* 230, is as follows:

" SECT. 1. Any person who shall have been duly enlisted and mustered into the military or naval service of the United States, as a part of the quota of any city or town in this Commonwealth, under any call of the President of the United States, during the recent civil war, and who shall have continued in such service for a term not less than one year, or who shall have died or become disabled from wounds or disease received or contracted while engaged in such service, or while a prisoner in the hands of the enemy, and the wife or widow and minor children of such person, shall be deemed thereby to have acquired a settlement in such city or town; and all the rights, duties, and liabilities pertaining to such a settlement, as set forth in chapters sixty-nine and seventy, and in section forty-nine of chapter seventy-one of the General Statutes, shall attach thereto : *provided,* such person was, at the time of his enlistment, of the age of twenty-one years, an inhabitant of said city or town, and had resided therein for six months next previous to the time of his being mustered into said service."

" SECT. 2. Any person enlisted, mustered, and serving as a part of the quota of any city or town as set forth in the first section of this act, but who shall not be entitled to a settlement therein by reason of the want of age, or residence required by said section, shall, nevertheless, be entitled for himself, his wife or widow, and minor children, to relief and support in such city or town, if at any time they should fall into distress therein, or stand in need of such relief or support; and such city or town shall not send such person, nor his wife or widow, nor his minor children, to any state almshouse, nor remove them to any other place, nor recover the expenses of their relief or support rom any other city or town, nor receive the same from the Commonwealth; and if any city or town shall cause any such person so entitled to relief therein to be sent to any state almshouse, or removed to any other place, such city or town shall be liable, in an action of tort, for all expenses of their relief and support thereafter incurred in such almshouse, or by any other city or town. But, otherwise than as above provided, said city or town shall not be liable to any other city or town, nor to the Commonwealth, for the expenses of any relief or support furnished to such person, or to his wife, widow, or minor children, in such other place or in any state almshouse."

" SECT. 3. The provisions of this act shall not apply to any person who shall have enlisted and received a bounty for such enlistment in more than one town, unless the second enlistment was made after an honorable discharge from the first term of service, nor to any person who shall have been guilty of wilful desertion, or who shall have left the service otherwise than by reason of disability or an honorable discharge."

The main question at issue was the settlement of the pauper Thomas. Among other proof offered to establish its case, the plaintiff was permitted to introduce, against the exceptions of the defendant, the record of the defendant town, kept under the provisions of the Sts. of 1863, cc. 65, 229, showing the enlistment of Thomas, as part of the quota of the defendant town, on August 9, 1862, for three years, and the payment to him of bounty by said town ; also, under exception, the General Order No. 26, dated July 7, 1862, of the Governor, calling for troops, and assigning quotas ; also the discharge of Thomas from the service of the United States. The discharge was dated June 2, 1865, and stated that "no objection to his being reënlisted is known to exist." On the margin of the paper, in red ink, was the following : "The Adjutant General U. S. A. reports this soldier to have deserted April 6, 1863. The charge has not at this date been reversed. 2d Auditor's Office, Sept. 6, 1871."

It appeared that the red ink writing in the margin had been added after the discharge had been originally granted, and in the possession of Thomas, and upon its return to Washington upon a pension application. The defendant objected to the admission of the paper, but it was allowed.

The defendant contended that Thomas had no military settlement, because he had been guilty of "wilful desertion," and in support of this, offered the certificate, a copy of which appears in the margin,* and also a duly certified copy of the muster-roll

---

* "WAR DEPARTMENT, Adjutant General's Office, Washington, July 2, 1870. It appears from the Records of this office, that William O. Thomas, Private of Company "G," Thirty-ninth Regiment Massachusetts Infantry Volunteers, enlisted at South Scituate, Massachusetts, on the ninth day of August, one thousand eight hundred and sixty-two, and mustered into service at Camp Stanton, Boxford, Massachusetts, on the second day of September, one thousand eight hundred and sixty-two, for three years.

"Received furlough for eight days from February twenty-fourth to March fourth, one thousand eight hundred and sixty-three. Was a deserter from March fourth to June fourth, one thousand eight hundred and sixty-three. Mustered out of service on the second day of July, one thousand eight hundred and sixty-five. THOMAS M. VINCENT, *Assistant Adjutant General.*

"Be it known that Thomas M. Vincent, who has signed the foregoing certificate is an Assistant Adjutant General of the Army of the United States,

of the company to which Thomas belonged, from February 28, 1863, to April 30, 1863.   On this paper Thomas was reported as a deserter.   The presiding judge refused to admit the certificate of the assistant adjutant general, but admitted the copy of the muster-roll.

It appeared in evidence that Thomas came home upon a furlough of eight days, granted February 24, 1863, on account of the alleged sickness of his wife.   On April 13, he was arrested at his home by a deputy sheriff, as a deserter, upon the authority of a letter from his colonel ; from thence he was taken to Surgeon General Dale, then to Fort Independence, afterwards to the convalescent camp at Alexandria, and rejoined his regiment June 4, serving therein until discharged.   It did not appear that he was ever tried for desertion or any other offence.

The circumstances under which he remained at home, and his motives, were in controversy.   The plaintiff offered evidence tending to show that he received an extension furlough from Surgeon General Dale on account of physical disability, and that he was taken to Boston about the time it expired ; that he had made application through his attending physician for another extension, and that when taken to Surgeon General Dale he was examined and told by Dale that he was wrongfully arrested, and that he was not fit to go back to duty, and that in point of fact the soldier was in such a physical condition as to be entirely unfit to return.   The defendant offered evidence to the contrary, tending to show that he had overstayed his furlough, that his sickness was feigned, and that he had wilfully deserted his duty.

The articles of war were introduced; and Thomas testified that they were read to him, and that he understood them.

The defendant asked the court to rule that intentional absence, without leave, from military service, constituted wilful desertion ; that the muster-roll in evidence furnished conclusive

---

and the legal custodian of the records of the Adjutant General's office, and that to his attestation as such full faith and credit are and ought to be given.

" In testimony whereof I, William W. Belknap, Secretary of War, have here-
unto set my hand and caused the Seal of the Department of War of
[Seal.]   the United States of America to be affixed on this second day of July,
one thousand eight hundred and seventy.

"WM. W. BELKNAP, *Secretary of War.*"

evidence of desertion. But the presiding judge declined so to rule, and instructed the jury as follows : " That mere absence without leave is not sufficient to constitute the offence ; that if Thomas had an extension furlough, which he believed gave him liberty to remain . at home, up to the time of his arrest, and remained at home under such belief, it is immaterial to this issue whether the furlough was regularly or irregularly granted ; that if he remained at home independently of the furlough, and in violation of military regulations, with an honest belief that his state of health unfitted him for military duty, and with an intention to return to that duty as soon as he deemed himself able, then it would not be wilful desertion ; that to constitute this offence there must have been the intent, in known violation of his duty, to quit or abandon the service permanently, or at least for some indefinite time ; that the muster-roll and the entry thereon did not furnish conclusive evidence of wilful desertion, but was merely evidence to be weighed with other evidence in the case."

If there was error in the admission or rejection of evidence, or in the other refusals or rulings, prejudicial to the defendant, the verdict may be set aside, otherwise, judgment on the verdict.

*J. B. Harris*, for the plaintiff.

*P. Simmons & B. W. Harris*, (*P. E. Tucker* with them,) for the defendant.

DEVENS, J.   This action was brought under the St. of 1865, c. 230, which was repealed by the St. of 1870, c. 392.  As, however, by the latter statute " acts done and proceedings commenced " are excepted from its operation, the present action is not affected thereby, it having been commenced some months previous to the passage of the repealing statute.   It presents the question whether the pauper Thomas, for the expense of the support of whom the action was brought, had acquired under the earlier statute, in the defendant town, what is sometimes called a military settlement.

The record of the defendant town kept in pursuance of the Sts. of 1863, cc. 65, 229, was of the nature of a public record, and therefore competent evidence of what was required to be contained in it, and the general order of the Governor of the Commonwealth was also competent evidence of the call for troops under

the acts of Congress, and the assignment of its quota to the defendant town, although that this call was made and quotas were assigned to all the towns, were historical facts recognized by the terms of the St. of 1865, *c.* 230. *Wayland* v. *Ware*, 104 Mass. 46.

The certificate of discharge was also competent for the purpose of showing that Thomas did not leave the service otherwise than by reason of an honorable discharge. The defendant did not ask for any ruling as to the effect to be given to the indorsements upon it subsequently made at the office of the Adjutant General of the Army of the United States; but objected generally to its admissibility apparently for any purpose. What effect was given to these by the presiding judge is not shown by the exceptions; but its admissibility was not affected by indorsements, which, without the consent of the soldier, had subsequently been placed upon it.

In *Fitchburg* v. *Lunenburg*, 102 Mass. 358, reported since this cause was tried, it was held that a certificate in due form from the proper military officer of an honorable discharge from the military service of the United States was conclusive evidence of the cause and manner of leaving the service by a soldier, and that evidence, which in that case had been offered of the soldier's previous absence from duty and of his arrest for desertion, unaccompanied by any evidence that he had been convicted or sentenced therefor, was incompetent, and rightly rejected. Under this decision much of the evidence which was admitted for the defendant was immaterial, and it remains only to be seen whether it was in any way prejudiced as to the true issue of the case by the refusal to give the instructions requested, or to receive such other evidence as was offered.

The defendant requested the court to rule that the rolls admitted were conclusive evidence of desertion. Upon the muster-roll, which is made every two months, the reasons and time of absence of each soldier are required to be entered, (Articles of War, Art. 13, U. S. St. of 1806, *c.* 20,) and entry of the word " deserted " by the commanding officer of the company, who is then to account for all the men of his command, against the name of the soldier, is in the nature of a charge against such soldier of the crime of desertion; but it is not an adjudication that he is

guilty of the offence, which, as it is one of the gravest offences known to the military law, can be made only by a court martial. The court, therefore, in permitting this evidence of the entry upon the muster-roll to be weighed with the other evidence in the case upon the question of wilful desertion, gave it a consideration at least as great as that to which it was entitled.

The defendant also requested the court to instruct the jury that intentional absence without leave from the military service constituted wilful desertion. Upon this point the instructions were correct. By the Articles of War, *supra,* there are defined the two offences of desertion (Article 20) and absence without leave, (Article 21,) which are treated by the punishments prescribed as offences of very different grades. By the use of the term " wilful," the Legislature did not, in our opinion, intend to do anything more than to mark and emphasize that distinction. Mere absence without leave does not constitute the offence of desertion under the Articles of War, or of " wilful " desertion. When committed by a soldier it is a violation of duty, but as it is accompanied always by an intention to return and to submit himself necessarily to punishment, if it has been incurred, it is a very different offence from that of abandoning the service permanently or for some indefinite time, unaccompanied by an intent to return, which constitutes desertion. In the instruction of the presiding judge this distinction was clearly and accurately pointed out.

The certificate from the Adjutant General's Office, signed by one of the assistant adjutants general, of what appeared from the records of that office, did not profess to be a transcript of the records, but was simply a statement of what the certifying officer, under whose hand it was, deemed to be shown by them; and was rightly rejected, even if otherwise competent, for the reason that it was clearly possible that the officer might have been mistaken as to the true conclusions to be drawn from the records. *Oakes* v. *Hill,* 14 Pick. 442. *Robbins* v. *Townsend,* 20 Pick. 345. *Exceptions overruled.*