INHABITANTS OF MILFORD *vs.* INHABITANTS OF UXBRIDGE.

Worcester. Oct. 6, 1880. — Jan. 11, 1881. COLT & MORTON, JJ., absent.

Under the St. of 1878, *c.* 190, § 1, *cl.* 10, providing that any person "duly enlisted and mustered" into the military service of the United States, as part of the quota of a city or town, under any call of the President during the late civil war, and who fulfils the other requirements of that act, shall be deemed to have acquired a settlement in such city or town, the fact that a person has been enlisted and mustered by a false name does not prevent his acquiring a settlement; and, in an action by one town against another for his support as a pauper, his identity may be shown by parol evidence.

In an action by a town against another town for the support of a pauper, the defence was that the pauper had acquired a settlement in a third town by reason of his military service in the army of the United States as part of the quota of that town. The pauper testified that he heard that he was drafted, and went into another State to avoid the draft, and there enlisted, but was not mustered into the service; and that he then left that State, and enlisted and served as part of the quota of the town in question. *Held,* that this evidence did not show that he had been "proved guilty of wilful desertion," within the meaning of the St. of 1878, *c.* 190, § 1, *cl.* 10.

ENDICOTT, J. This is an action to recover from the defendant the expenses incurred in supporting Joshua O. Langley, a pauper, who is alleged to have a settlement in Uxbridge. The report finds that Langley has a settlement in Uxbridge, unless it is established on the facts reported, that, under the Sts. of 1870, *c.* 392; 1871, *c.* 379, § 2, and 1878, *c.* 190, § 1, *cl.* 10, he acquired a settlement in Warren by reason of his military service in the army of the United States.

The St. of 1878, *c.* 190, § 1, *cl.* 10, embodies the provisions of the previous statutes, and provides, so far as applicable to this case, that any person duly enlisted and mustered into the military service of the United States, as a part of the quota of any city or town, under any call of the President during the late civil war, and who has continued in such service for a time not less than one year, and has not been proved guilty of wilful desertion, and has received an honorable discharge, shall be deemed to have acquired a settlement in such city or town.

It appears from the muster-rolls and records put in evidence at the trial, that William Smith of Uxbridge was mustered into

the military service of the United States, under a call of the President, in January 1864, as part of the quota of the town of Warren, and remained in the service until September 1865, when he was honorably discharged. It was proved, and was also admitted by the plaintiff at the trial, that the man thus mustered into service, and credited as part of the quota of Warren, by the name of William Smith, was in fact Joshua O. Langley, the alleged pauper. But it is contended that it is not competent to control the muster-rolls and records, and prove that Langley and Smith were the same person; and that there is no evidence that Langley was ever enlisted and mustered into the service of the United States.

The term "quota" of every city or town includes every person duly enlisted and mustered into the service of the United States, and the Legislature intended to include every man who served and made part of the quota. *Bridgewater* v. *Plymouth*, 97 Mass. 382. The statute has a twofold purpose; to impose a burden upon the town, and to confer a benefit upon the person serving as part of its quota. The person known and mustered into service as William Smith became a part of the quota of Warren. He served one year and was honorably discharged. The town thus had the benefit of his service, and he had done the acts which entitled him to a settlement. We are of opinion that it was competent for the defendant to prove that the person who thus served under the name of William Smith was the same person as the pauper whose real name is Joshua O. Langley.

In *Scanlan* v. *Wright*, 13 Pick. 523, a deed was given to a married woman by her maiden name, and Chief Justice Shaw in delivering the judgment, after stating that it was the common case of a person known by different names, said, "We think it was no violation of the rule which rejects parol evidence, when offered to contradict or control a deed, to show that the peti- tioner was the person to whom the grant was made, that she was in fact known by her maiden name to some persons and especially to the grantor, and that there was no other person claiming to bear the name used in the deed, or claiming title under it." That Langley was known by the name of William Smith while serving in the army is evident, and that the town

of Warren knew him by that name is proved by its records, wherein it appears that he served as part of its quota. And it is not contended that any person but Joshua O. Langley claims to bear the name thus entered upon the records of the town. In *Sanford* v. *Hodges*, 11 Gray, 485, an action was brought against Lewis B. Hodges on a judgment recovered against Lewis Hodges, and the officer was allowed to testify that he served the original writ on which the judgment was recovered upon the defendant, and it was held that this was sufficient evidence of the defendant's identity and that the plaintiff recovered the judgment against him by the name of Lewis Hodges. See also *Pierce* v. *Boston Five Cents Savings Bank*, 129 Mass. 425. The records put in evidence certainly cannot be regarded as any more conclusive than a deed or a record of court.

Evidence was offered to prove that Langley had previously been drafted in Uxbridge, and had afterwards enlisted in Rhode Island and had deserted; and it is contended that he could not have acquired a settlement in Warren, as claimed by the defendant. The substance of Langley's evidence on this point was, that he heard that he was drafted, and went to Rhode Island to avoid the draft, and there enlisted, but was not duly mustered into the service; and that he then left Rhode Island, and enlisted and served as part of the quota of Warren. But this evidence does not establish the fact that he had been guilty of wilful desertion within the meaning of the statute. He was never mustered and sworn into service in Rhode Island, and did not become a soldier in the army of the United States. *Tyler* v. *Pomeroy*, 8 Allen, 480. And it has been held that the term " wilful desertion " used in the statute is the desertion defined by the articles of war. U. S. St. April 10, 1806, art. 20. Nor was there any adjudication that he had ever been guilty of that offence. *Hanson* v. *South Scituate*, 115 Mass. 336.

This case is clearly to be distinguished from *Commonwealth* v. *Hall*, 3 Pick. 262. Charles Jones Hall was enrolled in a company of militia by the name of Charles Hall. No other facts appear, and it was held that he was not duly enrolled, and could not properly be fined for failing to appear at a meeting of the company. If he had given his name as Charles Hall, and had

actually served in the militia under that name, a very different question would have been presented.

By the terms of the report there must be

*Judgment on the verdict for the defendant*

*W. S. B. Hopkins*, for the plaintiff.

*G. F. Verry*, for the defendant.