MATTHEW P. SCULLIN *vs.* CITIES SERVICE OIL COMPANY & another.

Suffolk.   February 13, 1939. — September 18, 1939.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Executive Council. Evidence,* Competency, Extrinsic affecting writing, Record of public board, Presumptions and burden of proof. *Commonwealth,* Contracts. *Contract,* With Commonwealth, Validity. *Equity Pleading and Practice,* Answer, Decree, Amendment. *Public Officer. Estoppel. Res Judicata.*

The Executive Council is required by the Constitution to act in a formal manner upon matters coming before it and to keep an official record of such acts, and such record is the only competent evidence thereof.

Approval by the Executive Council of a contract by the department of public works for the sale of land under G. L. (Ter. Ed.) c. 91, §§ 2, 3, must be of the contract in its entirety and in the terms finally agreed upon.

A finding upon conflicting evidence, that documents approved by certain votes recorded on the register of the Executive Council did not include a certain contract of sale by the department of public works of flats of the Commonwealth, was warranted and justified the dismissal of a petition in equity depending upon the validity of such contract.

No error was shown, at the hearing of a petition in equity grounded on a contention that certain votes recorded on the register of the Executive Council showed a statutory approval of a detailed contract of

sale of flats by the department of public works, in a ruling by the judge that the records of the votes were not ambiguous and were not open to contradiction, enlargement or explanations by parol evidence, nor in his striking from the record all testimony and evidence offered for any of those purposes, where it appeared by his findings that he considered conflicting evidence offered in an attempt merely to prove the identity of the contract relied on with the papers referred to and approved in the votes, and found against such identity.

Neither the facts that the executive secretary of the Executive Council indorsed upon a contract made by the department of public works for the sale of flats of the Commonwealth, "Approved in Council," with a reference to a date, and that the great seal of the Commonwealth was affixed thereto, nor the presumption of regularity in the conduct of public officers, was effectual to show proper approval if the register of the Council did not show it.

Where a contract of sale of Commonwealth flats, purported to have been made by the department of public works, was found to lack the approval by the Executive Council required by statute, the purchaser gained no rights by estoppel through the making of payments under its terms.

Upon an appeal by one defendant from a final decree dismissing a proceeding in equity against two, where neither defendant had filed a counterclaim against the other, the appellant had no standing in this court to seek affirmative relief against his codefendant.

In order to preclude any possible contention that a matter, which was not properly before this court on the record in a proceeding in equity but which had been made the subject matter of rulings by the trial judge, became *res judicata* by an affirmance of the decree, this court ordered that the decree be modified by the addition of a statement that it was without prejudice respecting that matter, and that, as so modified, it be affirmed.

The denial in a proceeding in equity of a motion by a defendant for leave to amend his answer by adding a counterclaim against a codefendant, presented after findings by the judge, was within his discretion and disclosed no error.

PETITION IN EQUITY, filed in the Superior Court on April 14, 1937.

The petitioner and the Commonwealth, a respondent, appealed from a final decree entered by order of *Pinanski*, J.

*C. F. Gadsby*, (*R. G. Wilson, Jr.*, with him,) for the petitioner.

*E. O. Proctor*, Assistant Attorney General, for the Commonwealth.

*F. H. Stewart*, (*A. F. Ray & F. X. Daly* with him,) for Cities Service Oil Company.

QUA, J.  This proceeding is prosecuted against Cities Service Oil Company, hereinafter called the oil company, to enjoin it from further trespassing upon a parcel of land which consists, at the point in question, of tidal flats bordering upon Hayward's Creek in Braintree.  Specifically, the petitioner seeks to prevent the oil company from further using a wharf with its appurtenances built by its predecessor in title and extending from upland owned by the oil company over the flats to which the petitioner claims the exclusive right of possession.

The wharf was constructed, and the oil company claims the right to maintain and use it, by virtue of "License #51" granted to its predecessor in title on June 21, 1920, by the department of public works, "subject to the provisions of" R. L. c. 96, St. 1911, c. 748, and all laws applicable thereto. (See now G. L. [Ter. Ed.] c. 91.)  The petitioner's rights in the flats, and consequently his right to maintain this petition, depend upon an alleged contract dated December 29, 1936, purporting to have been executed between him and the Commonwealth as represented by the commissioners of public works whereby the Commonwealth agreed to sell, and the petitioner agreed to buy, a tract containing the flats for the price of $100,000, of which $5,000 was to be paid upon delivery of the agreement and the remaining $95,000 in nineteen annual instalments thereafter, and whereby the petitioner was also to pay the sum of $1,875 per year as "*rental* for the occupation and use of said land" until the final payment on the purchase price should be made.

The Commonwealth has been joined as a party respondent, although the petition contains no prayer for relief against the Commonwealth and no allegation against it beyond the statements that the Commonwealth granted, and on December 31, 1936, terminated, "License #51," and that the Commonwealth entered into the contract to sell the flats to the petitioner.  The Commonwealth demurred for want of equity and also answered admitting all the allegations of the petition.  It has not argued its appeal from the overruling of its demurrer, and we regard that appeal as waived.

A question going to the vitals of the case is raised by the contention of the oil company that the alleged contract between the petitioner and the Commonwealth for the sale of the flats, upon which the petitioner's rights depend, never became valid because not shown to have been approved by the Governor and Council. That a contract for the sale by the Commonwealth of tidal flats located in Boston Harbor (as were the flats which the petitioner agreed to buy) is not valid without such approval seems not to be disputed. G. L. (Ter. Ed.) c. 91, §§ 2, 3. The argument has been directed to the nature of the proof required to establish approval by the Council.

The Council is a body created by the Constitution "for advising the governor in the executive part of government . . . ." "And the governor, with the said councillors, or five of them at least, shall and may, from time to time, hold and keep a council, for the ordering and directing the affairs of the commonwealth, according to the laws of the land." Constitution, Part II, c. 2, § 3, art. 1; Amendments, art. 16. Councillors, "in the civil arrangements of the commonwealth, shall have rank next after the lieutenant governor." Part II, c. 2, § 3, art. 3. Whether the Council acts in conjunction with the Governor or whether it merely gives advice or consent as to matters in the first instance determined by him, it acts with the Governor or alone as a recognized official executive or advisory board. *Opinion of the Justices*, 190 Mass. 616. See *Opinion of the Justices*, 211 Mass. 632; *Murphy* v. *Casey*, 300 Mass. 232, 236. The Constitution, in Part II, c. 2, § 3, art. 5, provides: "The resolutions and advice of the council shall be recorded in a register, and signed by the members present; and this record may be called for at any time by either house of the legislature; and any member of the council may insert his opinion, contrary to the resolution of the majority." The Constitution itself therefore discloses the intent that the Council shall act in a formal manner upon matters coming before it, and that an official record of such acts shall be kept. When the Legislature by G. L. (Ter. Ed.) c. 91, §§ 2, 3, required contracts by the department of public works for

the sale of land to be approved by the Governor and Council, it must be deemed to have contemplated that such approval should be by formal vote of the board taken at a meeting and duly embodied in its register in accordance with the Constitution. In *Carbone, Inc.* v. *Kelly*, 289 Mass. 602, at page 605, in dealing with the alleged act of a board of far less dignity than the Governor and Council, we said: "It is a general rule that where a public board is required to act through votes at meetings and to keep records of its acts, the record duly kept cannot be varied or added to by other evidence," and further: "Like other aspects of the so called parol evidence rule, this is a rule of substantive law and not a part of the law of evidence. It forbids proof of acts of the board by any evidence other than the record." These propositions are amply supported by the cases there cited, including *Halleck* v. *Boylston*, 117 Mass. 469; *Morrison* v. *Lawrence*, 98 Mass. 219, 221, and *Lowell* v. *Wheelock*, 11 Cush. 391, and also by *Mayhew* v. *District of Gay Head*, 13 Allen, 129, and *Andrews* v. *Boylston*, 110 Mass. 214. The case of *Austin* v. *Foster*, 9 Pick. 341, is distinguishable, as it does not there appear that the law required any record to be kept. In *Noyes* v. *Ambler*, 296 Mass. 524, there was a record of approval of the sale. Moreover, that case and also *Willard* v. *Newburyport*, 12 Pick. 227, 232, related to action by the selectmen of a town, and it has formerly been said that the law did not require selectmen to keep records of their proceedings and that the rules above quoted did not apply to such minutes of their proceedings as they might voluntarily make. *Commonwealth* v. *McGarry*, 135 Mass. 553. See now, however, G. L. (Ter. Ed.) c. 66, § 6. None of the other cases cited seems to require special comment. We are satisfied that the principles hereinbefore stated apply to acts of the Governor and Council and to the manner in which such acts must be proved in court.

Approval by the Governor and Council of the alleged contract between the petitioner and the Commonwealth does not appear upon the register. The record of a meeting on December 18, 1936, contained this entry:

"It was voted to approve a settlement by the Department of Public Works as follows:

(1) Settlement of land damage case of the Bethlehem Shipbuilding Corporation, Ltd., for land taken in connection with the erection of the new Fore River Bridge. The Bethlehem Shipbuilding Corporation, Ltd., has agreed to accept $70,000 in full settlement of its claim, this amount to be paid from the highway fund.

(2) Sale to the Bethlehem Shipbuilding Corporation, Ltd. of 14.71 acres at $5,000 per acre — total of $73,550 — provided, however, that the Bethlehem Shipbuilding Corporation, Ltd. or the Fore River Railroad Corporation, or both, will give to the Commonwealth by proper instrument the right for the Commonwealth to go under and over the railroad as a permanent easement.

(3) Authority to make agreement with one M. P. Scullin, of Newton, for sale under lease and rental agreement, as follows:

Sale price, . . . . $100,000.
Payments on principal . . 4,000. per year.

In addition to sale price purchaser agrees to pay $1,500 per year additional rental until the full sale price is paid.

25 years at $4,000 per year, . . . . $100,000.
25 years at $1,500 per year, . . . 37,500.
Total to Commonwealth, . . . $137,500."

The record of a meeting on December 29, 1936, contained this entry:

"Final papers in connection with the action of the Department of Public Works in the settlement of land damages of the Bethlehem Shipbuilding Corporation for land taking in connection with the erection of the new Fore River Bridge approved by the Governor and Council under date of Friday, December 18, 1936, were ratified."

The entry for December 18 does not include an approval of the contract now alleged to have been made. The statute requires approval of the contract in its entirety and in the terms finally agreed upon. The vote of December 18 does not refer to any particular instrument, and in fact it does not appear that at that time any instrument had yet been drawn up. The final contract as purportedly executed between the Commonwealth and the petitioner on December 29 is a somewhat elaborate document. It is much more than a simple conveyance on the terms set forth in the vote of December 18. It contains provisions relative to a drain, to a building used as a store, to crossings over and under a railroad, to alterations and improvements, and to various other matters some of which involve special covenants on the part of the Commonwealth other than those regularly and commonly included in a contract to convey land. The terms of payment, although apparently more favorable to the Commonwealth, are not the same as those set forth in the vote. The entry for December 29 relates only to final papers in connection with the settlement of land damages of the Bethlehem Shipbuilding Corporation. On the face of the record there is nothing to show that the contract to convey land to the petitioner was a final paper in connection with such a settlement with the Bethlehem corporation. It is true that the record for December 18 had referred to such a settlement in its paragraph "(1)," and the form of the vote there set forth, taken as a whole, might suggest, although it can hardly be said to prove, some sort of association between the Bethlehem settlement and the sale to the petitioner. But in the record for December 29 there is no mention of the petitioner, and the form of that record is at least equally consistent with an intent to approve only the settlement with the Bethlehem corporation referred to in paragraph "(1)" of the earlier record as with an intent to approve papers relating to the matters referred to in all three paragraphs of that record.

But the petitioner argues that the matters referred to in the several paragraphs of the record for December 18 were in fact so interrelated that the contract between the Com-

monwealth and the petitioner was a final paper "in connection with the action of the Department of Public Works in the settlement of land damages of the Bethlehem Shipbuilding Corporation . . . approved by the Governor and Council . . . December 18, 1936," within the meaning of those words as used in the record for December 29; and that the connection can be shown by parol evidence, not for the purpose of contradicting or adding to the record, but for the sole purpose of identifying its subject matter. In a proper instance such evidence would be competent for that purpose. *Mayo* v. *West Springfield*, 260 Mass. 594. *Stone* v. *Cambridge*, 6 Cush. 270. In this instance the great difficulty with the petitioner's contention is that the trial judge has found the fact of identification against him. The judge states: "I find and rule that the 'final papers' mentioned in the vote of December 29, 1936 referred only to the settlement of land damages and is the subject matter set forth in paragraph numbered (1) in the record of the December 18th meeting. I, therefore, find and rule that there is nothing in the records of the meetings of December 18th and December 29, 1936 showing the consideration and approval by the Governor and Council, which is required by law, of the Scullin agreement (Exhibit 38) now before the Court." Although the judge used the word "rule" as well as the word "find," there seems to be no doubt of his intention to make a finding of fact in so far as a question of fact was involved. *Flesher* v. *Handler*, 303 Mass. 482, 483. The judge employed the same dual expression in several other places in his statement of findings and rulings in passing upon so called mixed questions of fact and law. We cannot say that the finding was plainly wrong. The evidence upon the point now under discussion was conflicting. The burden of proof was upon the petitioner. Even if the evidence might have supported a contrary finding, which we need not decide, it did not compel one, and the finding of the judge who saw and heard the witnesses should not be disturbed.

Next it is contended that the finding is vitiated by error of law in that the judge ruled out of consideration evidence

tending to identify the petitioner's contract as a final paper "in connection with" the land damage settlement. The language of the judge is as follows: "I rule that the only competent and relevant evidence of the proceedings, votes and orders of the Council at its meetings of December 18 and December 29, 1936, are the records themselves, and they are not open to contradiction, enlargement or explanation by parol evidence. The records are conclusive and cannot exist partly in writing and partly in parol, and cannot be varied or controlled, nor can omissions, if any, be supplied by oral evidence. The records of these two meetings are not ambiguous. I have therefore disregarded and stricken from consideration all testimony and evidence, by whomsoever introduced, which was offered for the purpose of or which in any way tended to contradict, explain, enlarge, vary, control or provide any alleged omission in the records of the meetings of December 18 and December 29, 1936." Reading these words in connection with the findings and rulings as a whole, we do not interpret them as intended to exclude from the judge's consideration evidence merely identifying the subject matter referred to in the record and applying the record to the extraneous facts to which it relates. The judge could not have intended to leave the record suspended in mid air. If he had intended to exclude all identifying evidence, there would have remained no occasion for making the finding of fact which he did make on the subject of identification. During the hearing much evidence had been received to which the language of the judge could apply without giving that language the strained and unreasonable interpretation for which the petitioner argues. We think the judge merely intended to lay down for his own guidance the rules which we have stated earlier in this opinion.

The facts that the alleged contract with the petitioner bore the certificate of the executive secretary "Approved in Council: Dec. 29, 1936," and that the great seal of the Commonwealth was affixed thereto, whatever *prima facie* effect might be ascribed to either or both, cannot supply the place of actual proof of approval by means of the reg-

ister of the Council, when the issue of approval is squarely raised. *Hanson* v. *South Scituate,* 115 Mass. 336, 342. *Grover* v. *Smead,* 295 Mass. 11.

No presumption of regularity in the conduct of public officers can prevail against proof of the failure to take a step required by law. *Lowell* v. *Wheelock,* 11 Cush. 391, 393, 394. *Commercial Wharf Corp.* v. *Boston,* 194 Mass. 460, 467. *Wood* v. *Concord,* 268 Mass. 185, 188, 189. *Continental Construction Co.* v. *Lawrence,* 297 Mass. 513, 516. *American Employers' Ins. Co.* v. *Commissioner of Insurance,* 298 Mass. 161, 169. Nor could the petitioner by making payments under the alleged contract acquire by estoppel the equivalent of a valid contract without the required approval of the Governor and Council. · *Attorney General* v. *Methuen,* 236 Mass. 564, 578, 579. *Rossire* v. *Boston,* 4 Allen, 57. *Wormstead* v. *Lynn,* 184 Mass. 425, 428. *Reed* v. *Springfield,* 258 Mass. 115, 118.

From what has been said it follows that the foundation of the petitioner's case fails, and that as to him the petition was rightly dismissed.

The Commonwealth contends that there was error adversely affecting its rights in other rulings of the trial judge to the effect that the oil company's "License #51" is irrevocable, and that, if the final decree is affirmed, these rulings may become *res judicata* as between the Commonwealth and the oil company to the prejudice of the former as owner of the flats upon which the wharf stands. See, however, *Brown* v. *Great American Indemnity Co.* 298 Mass. 101, 105. The Commonwealth in its brief states that it seeks to have these rulings "reversed." But the appeal with which we are now dealing is necessarily from the final decree and not from various rulings made by the judge in the process of hearing the case and reaching that decree. We should consider these rulings, not as separate decisions or decrees to be affirmed or reversed, but only with respect to their effect upon the final decree. Both the Commonwealth and the oil company stand before the court solely in the position of parties defendant to the petition. Neither respondent has set up any counterclaim

against the other or against the petitioner. If an issue between the Commonwealth and the oil company as to the irrevocability of "License #51" can be said to have arisen "out of the transaction which is the subject matter of the suit," upon which we express no opinion, either respondent in its answer could have set up a counterclaim against the other (in lieu of a cross bill) as to that issue, subject however to the discretion of the court. Rule 32 of the Superior Court (1932). At any rate, in the present posture of the case, there being no counterclaim, neither the Commonwealth nor the oil company can ask affirmative relief against anyone. *Andrews* v. *Gilman*, 122 Mass. 471. *J. H. McNamara, Inc.* v. *McGuire*, 254 Mass. 589, 594. *Krauss* v. *Kuechler*, 300 Mass. 346, 349. A decree dismissing the petition is the most favorable decree to the Commonwealth which is now possible. It is the decree which the Commonwealth requested at the close of the hearing. It is the correct decree upon the present record. Under these circumstances, we ought not to enter upon a discussion of further important questions which cannot lead to any change in the final decree. However, to avoid any possible future contention that matters upon which we have not passed have become *res judicata*, the final decree may be modified by adding a statement that it is without prejudice to the contention of the Commonwealth that "License #51" is revocable and has been revoked. *Whittemore* v. *Selectmen of Falmouth*, ante, 72. *Moran Towing & Transportation Co. Inc.* v. *Navigazione Libera Triestina, S. A.* 92 Fed. (2d) 37, 40; certiorari denied, 302 U. S. 744. See *Field* v. *Field*, 264 Mass. 549; *Mezoff* v. *United Kosher Butchers Association, Inc.* 274 Mass. 174; *Jones* v. *Jones*, 297 Mass. 198, 213.

After the filing by the trial judge of his findings and rulings the Commonwealth moved to be allowed to add a counterclaim to its answer. Denial of this motion was within the discretion of the trial judge. See Rule 32 of the Superior Court (1932).

The decree overruling the demurrer of the Commonwealth is affirmed. The order denying the motion of the

Commonwealth to amend its answer is affirmed. The final decree, as modified, is affirmed.

*Ordered accordingly.*