Inhabitants of Bridgewater *v.* Inhabitants of Plymouth.

INHABITANTS OF BRIDGEWATER *vs.* INHABITANTS OF PLYMOUTH

A general law changing the rules of settlement and having the effect to transfer from one town to another the obligation to support paupers is not therefore unconstitutional.

The term "quota of any city or town" in St. 1865, c. 230, § 1, includes every person who during the recent civil war was enlisted and mustered into the military or naval service of the United States, and, after quotas of cities and towns were legally recognized and assigned, was credited to the quota of such city or town under any call of the President, although his term of service ended before any such legal recognition and assignment.

On a motion for a new trial, the testimony of two of the jurors is inadmissible to show that they misunderstood the instructions of the presiding judge, or that they were induced by misapprehension to assent to the affirmation in court of the verdict.

CONTRACT for expenses incurred in supporting the widow and five minor children of Homer Bryant. The question at issue was whether the first section of the St. of 1865, *c.* 230,* operated to give them a settlement with the defendants.

At the trial in the superior court, before *Rockwell,* J., it was agreed that Bryant had no settlement in Massachusetts, and that the settlement of his widow was with the plaintiffs unless it was changed by force of that statute; that he was an inhabitant of Plymouth, where he had resided more than six months next previous to September 21; 1861, and was of full age, when on that day he enlisted as a soldier and went into camp at

---

* The St. of 1865, *c.* 230, § 1, approved by the Governor May 13, 1865, is as follows:

"Any person who shall have been duly enlisted and mustered into the military or naval service of the United States as a part of the quota of any city or town in this Commonwealth, under any call of the President of the United States, during the recent civil war, and who shall have continued in such service for a term not less than one year, or who shall have died or become disabled from wounds or disease received or contracted while engaged in such service, or while a prisoner in the hands of the enemy, and the wife or widow and minor children of such person, shall be deemed thereby to have acquired a settlement in such city or town ; and all the rights, duties and liabilities pertaining to such settlement as set forth in the Gen. Sts. *c.* 69, 70, and *c.* 71, § 49, shall attach thereto: *provided,* such person was, at the time of his enlistment, of the age of twenty-one years, an inhabitant of said city or town, and had resided therein for six months next previous to the time of his being mustered into said service."

Lynnfield, where, on September 28, he was mustered as a private in the twenty-third regiment of Massachusetts volunteer infantry, with which he served until he was discharged in North Carolina, September 20, 1862, for physical disability ; and it appeared that he afterwards died, whereupon his widow and children fell into distress in Bridgewater, and were supported in the almshouse of that town, and notice thereof was duly given to the defendants.

At the time when Bryant enlisted and was mustered into the service, there was no law either of the Commonwealth or of the United States, fixing or assigning to Massachusetts any quota of the whole number of soldiers and sailors called by the President into the military and naval service, or fixing or assigning to any city or town in the Commonwealth any quota of the whole number of soldiers and sailors contributed to the military and naval service from Massachusetts ; and " it was contended by the defendants that at the time of his enlistment and service no specific number of men had been or was required of cities and towns ; but it was admitted that in ascertaining and fixing the quotas required of cities and towns under subsequent calls of the President, reference was had to the number of men already furnished by each city or town, and that in such apportionment said Bryant was credited as furnished by Plymouth. The defendants, however, further contended that if he could be considered as forming a part of any subsequent or aggregate quota, he was not so enlisted and mustered, and thus not within the operation of the statute in question in the case."

There was also evidence tending to show that at the time of his enlistment and muster there was no call of the President on Massachusetts for troops, which had not been filled.

And there was further evidence on the question whether or not he died or was disabled from disease contracted in the service.

The defendants presented to the judge several prayers for instructions to the jury, including these :

" 1. That if Bryant enlisted when no requisition or call upon Massachusetts for troops existed, except such call or calls as had

been filled and fully answered, he was not enlisted and mustered within the meaning of the statute;

" 2. That if he enlisted and was mustered into the service of the United States, and was discharged before any requisition or call was made upon towns and cities, and before there was any federal law providing for quotas to be supplied by towns or cities as such, his enlistment, muster and service cannot be said to be within the meaning of the statute;

" 3. That the enlistment and muster as one of the quota of a town or city, within the meaning of the statute, must be an enlistment and muster with the understanding or legal knowledge on the part of the United States that he was so enlisted and mustered to serve as part of the quota of a city or town;

" 4. That such enlistment and muster into service must have been with such understanding in fact, or implied as matter of law, on the part of Bryant;

" 5. That such enlistment and muster must have been with such understanding in fact, or implied as matter of law, on the part of the town or city of which he was an inhabitant for six months before his enlistment;

" 6. That if Bryant enlisted before there was any quota upon any city or town, and before it was known that there was or would be any quota of any town or city, and he was not furnished by said town at the time, and said town had no power or motive to have him enlisted or to restrain his enlistment other than was common to all loyal citizens, and if he served and was discharged before any quotas of any town or city were authorized or provided for by law, then his enlistment, muster and service were not within the statute;

" 7. That the statute is unconstitutional, *ex post facto*, and one affecting the obligation of contracts; and

" 8. That in all its provisions it should be construed strictly in favor of the town sought to be charged."

The defendants also prayed for an instruction to the jury that, upon the facts, it did not appear that Bryant continued in the service for a term not less than one year; and also for certain instructions as to the effect of the testimony concerning his dis-

ease and disability upon the question of their liability under the statute.

The judge declined to give these instructions in the form requested, but instructed the jury in substance as follows : that in order to support a verdict for the plaintiffs it was necessary for them to be satisfied,

1. That Bryant was enlisted and mustered into the service; and as a part of the quota of Plymouth; and under some call of the President; and, if either one of these three conditions was not proved to their satisfaction, that the plaintiffs could not recover; and

2. That he continued in the service for a term not less than one year; and, if they were satisfied on the evidence that he enlisted on September 21, 1861, and was discharged on September 20, 1862, and received clothing, rations, and pay for a term of service including both those days, that they were authorized to find that he continued in the service for a term not less than one year : or,

3. That he died or became disabled from disease contracted while he was engaged in the service; and, if they should find that the disease of which he died was contracted before his enlistment, that would not be sufficient, although it might have been aggravated by his exposure while in the service; that the burden was on the plaintiffs throughout to prove that he died or was disabled by a disease which had its origin while he was in the service.

The jury, after remaining out fifteen hours, reported that they were unable to agree, and, on being brought into court and interrogated, stated that they had agreed upon the first two points submitted to them in the charge of the judge, but had not agreed upon the third point, whether Bryant died or was disabled from disease contracted in the service. The judge then directed them, " that if they agreed on the first two questions affirmatively, their verdict must be generally for the plaintiffs, though they might disagree on the third point; " and they retired to their room, and after a half hour returned the following verdict: " The jury find for the plaintiffs, and assess the dam-

ages in the sum of three hundred dollars." The judge then read to them the question: "Did the jury agree upon the finding that Bryant was engaged in the service a period not less than one year, or did they not?" To which the foreman said, "Yes." And the judge then read the question: "Did the jury agree upon the finding that Bryant died or was disabled from disease received or contracted while he was engaged in the service, or did they not?" To which the foreman answered, "Yes, we have agreed this morning."

The defendants' counsel then remarked that perhaps the jury misapprehended the direction of the judge, and thought that they must find for the plaintiffs on the last point if they found for them on the other points. The judge then asked the jury if they found for the plaintiffs on the last point, as to his disability, because they found for the plaintiffs on the other points; and the foreman answered that they did not. The defendants' counsel then said that perhaps some of the jury did. The judge then said to the jury that if any of the jurors dissented from the answer of the foreman, or thought he must find for the plaintiffs on the last point if he found for the plaintiffs on the other points, he might rise or otherwise manifest it; and no one rose or manifested any dissent. The foreman then came to the desk and wrote in answer to each question, "They did," and signed his name thereto, and then the verdict and the questions were read by the clerk, and affirmed by the jury in the usual manner.

On the next day the defendants filed a motion for a new trial, alleging, as reasons therefor, that the verdict was against the weight of evidence, that the jury never in reality agreed upon the issue of fact whether Bryant died or was disabled from disease contracted in the service, and that they or some of them, in rendering their verdict, acted under a mistake of fact and also under a mistake of the judge's instructions, resulting in injustice to the defendants; and in support of this motion they offered the affidavits and the testimony of two of the jurors, to show "that they had understood the judge to instruct them that they must find that Bryant died or was disabled from disease contracted in the service if they found for the plaintiffs upon the

other points, and they had not otherwise agreed to said finding, and were not satisfied from the evidence that he died or was disabled from disease contracted in the service; " and also to show " that when the jury were interrogated before the affirmation of the verdict, whether they had understood the judge to instruct them that they must find that Bryant died or was disabled from disease received or contracted in the service if they answered the other questions submitted to them in the affirmative, the said jurors understood the foreman to answer that they had so understood the judge, and that the said jurors assented to the affirmation of the verdict, supposing that the judge was informed how the instruction was understood by the jury." But the judge excluded the affidavits and testimony of the jurors, as inadmissible for either of the purposes named, and overruled the motion for a new trial.

The defendants then filed a motion in arrest of judgment, alleging, as reasons, that " it does not appear from the findings of the jury whether Bryant was duly enlisted and mustered into the military service of the United States, and continued in such service for a term not less than one year," and that " it does not appear from the findings of the jury whether he died or was disabled from disease received or contracted in the military service of the United States;" which motion also was overruled.

Judgment being then entered for the plaintiffs, the defendants alleged exceptions.*

*C. G. Davis & A. Mason,* for the defendants. The provisions of a statute imposing new obligations upon towns should be construed strictly in favor of the town sought to be charged. When Bryant enlisted and was mustered, there was no call of the President upon Massachusetts for troops; and the regiment of which he formed a part was not raised under any requisition from the President, but in excess of all calls. As his enlistment

---

* This case was argued at Plymouth in October 1867, only on the exceptions to the judge's refusal to give the jury the eight instructions enumerated in this report as prayed for by the defendants; and afterwards, upon the remaining exceptions, at Boston, March 30, 1868, before the same judges (except BIGE-LOW, C. J.), together with GRAY and WELLS, JJ.

and muster could not have been under a call not then in exist-
ence, they therefore were not within the St. of 1865, *c.* 230.   At
the time of his enlistment and muster, there also was no law of
the United States or of Massachusetts providing for quotas from
towns or cities, and therefore his enlistment and muster could
not have been as part of any such quota within the meaning of
the statute.   The statute impairs the obligation of contracts,
and is in derogation of vested rights.   *Rutland* v. *Mendon*, 1
Pick. 156.   Bryant did not continue in the service one year.
The continuing in service must be from the date of muster;
but if the time were computed from the date of enlistment, both
the day of enlistment and the day of discharge could not be
counted.   *Tyler* v. *Pomeroy*, 8 Allen, 480–506.   The verdict
should be set aside, because the jury proceeded upon an errone-
ous principle; and because there was a mistake of fact in the
affirmation, and some of the jurors did not assent to the ver-
dict.   The testimony of jurors was admissible to show their mis-
take.   *Pierce* v. *Woodward*, 6 Pick. 208.   *Lawrence* v. *Stearns*,
11 Pick. 502.   *Rex* v. *Woodfall*, 5 Burr. 2661.

*W. Latham & B. W. Harris* (*P. E. Tucker* with them), for the
plaintiffs.

FOSTER, J.   The nature and extent of the change in the law
of settlement made by St. 1865, *c.* 230, § 1, is the subject of
controversy in the present case.   The conditions of gaining a
settlement under this act are, 1. that the soldier or sailor shall
have been duly enlisted and mustered into the military service
of the United States as a part of the quota of the city or town
in which a settlement is claimed, under any call of the President
of the United States during the recent civil war; 2. that he
shall have continued in such service for a term not less than one
year; 3. or else that he shall have died or become disabled from
wounds or disease received or contracted while engaged in such
service, or while a prisoner in the hands of the enemy.

Under the first clause, the construction contended for by the
one party is that the soldier or sailor, at the date of his enlist-
ment and muster into service, must have been actually credited
to the town or city under the then existing provisions of law, as

a part of some quota which it was then liable by law to furnish under a previous requisition for troops; while the other party insists that it is sufficient if at any time the soldier or sailor was counted as a man serving to the credit of the town or city, although he may have enlisted as a volunteer before any legal obligation was imposed upon municipal corporations as such, and may have completed his entire term of service before any draft was ordered or number of men assigned as the due share or proportion of the town or city, which it was bound by law to furnish, to avoid a draft.

Obviously there were no quotas legally assigned to towns or cities before the passage of the U. S. St. of 1864, *c.* 13, unless by the operation of the U. S. St. of 1863, *c.* 75. Their previous obligation was only voluntary and patriotic. Afterwards the penalty of a draft hung over each municipality, to enforce the obligation to furnish its due proportion. But in ascertaining what that quota was, the previous contributions of volunteers were taken into account. Under the earlier requisitions for soldiers, there was no occasion to assign to the several towns and cities the number of men which constituted their due proportions. But the act of Congress recognized the obligation as having existed from the beginning, although not before enforced by any actual legislation. It did not so much impose the duty, as provide the mode in which the quota of each town or city should be ascertained, and by which the place should be compelled to supply the number of men assigned as its share. In so doing, the apportionment extended back to the earliest call for troops made in the war, and all the successive calls were added together, and treated as one common burden, while all voluntary enlistments, whenever made, were allowed as a part of the whole quota of the place, which was reckoned as one entire number.

We cannot leave out of sight this actually existing condition of affairs, in interpreting the language of the legislative enactment. The facts are known to us historically, and appear in the evidence before us.

The language of the statute seems sufficiently consistent

with the construction which accords best with its manifest purposes and with the actual operation of the whole military system during the war. We think that the term quota was not used in any legal or technical signification, but according to its natural sense and import, to designate the proportion or share of the common burden which from the beginning belonged to each place. The legislature intended the act to embrace every man who at any period served and went to make up the quota, although his service may have begun and ended before the quota was ascertained, or even before it was fastened by the statute as a legal obligation upon the respective towns and cities. Every soldier who was eventually credited to any municipality as a part of its quota, rendered to it the public service in return for which the privileges of a legal settlement therein have been conferred by the act under consideration. The same benefit has been received by the town, and the same rights were given by the statute, whatever may have been the date of the enlistment and mustering into the army. Any other interpretation would be to disregard the obvious purpose and policy of the legislature, and to violate the spirit of the law for the sake of sticking in its letter.

There is no constitutional objection to a general law which alters the rules of settlement, although its effect may be to transfer from one town to another the obligation to support individuals who may become entitled to relief as paupers. The expenses sought to be recovered were incurred after the passage of the act. *Goshen* v. *Richmond,* 4 Allen, 460.

The length of time the soldier served is immaterial, because it has been ascertained by the verdict of the jury that he died or was disabled by disease contracted while he was engaged in the service.

The affidavits or testimony of a part of the jury cannot be received to show that they misunderstood the instructions of the presiding judge, or that they were induced by misapprehension to assent to the affirmation of the verdict. *Chadbourn* v. *Frank-'in,* 5 Gray, 312. 3 Graham & Waterman on New Trials, 1438. Hilliard on New Trials, 195. The decisions are very numerous in which this principle has been applied. They rest upon sound

considerations of public policy, and the evidence offered in the present case falls clearly within the rule and its reasons.   In the King's Bench, Lord Denman refused to receive the affidavit of two jurors, to the effect that they were misled by the fact that the defendant began the case, and thought they were finding a verdict for the plaintiff, whereas the verdict was for the defendant.   *Bridgewood* v. *Wynn*, 1 Har. & Wol. 574.   *Breck* v. *Blanchard*, 7 Fost. (N. H.) 100.   The time for objecting to the verdict as announced, is when it is received and before it is recorded in open court.   To admit, afterwards, a conflict of affidavits, would be dangerous in the extreme, and lead to interminable controversy.

In the case of *Capen* v. *Stoughton*, 16 Gray,     , a sheriff's jury made a mistake in their verdict by signing the wrong blank.   The verdict was improvidently accepted by the court. At a subsequent term, the action was brought forward, and the mis-entry accepting the verdict was corrected on the docket, after which the affidavits of all the jury were admitted to show the mistake, and a new trial was ordered.   But two leading features plainly distinguish that case from the present.   First, after the entry that the verdict was accepted had been stricken off, the verdict was not a matter of record.   A sheriff's jury seal up their verdict and separate; it is returned into court at a subsequent term, and is never anywhere affirmed in their presence. When the question whether it shall be accepted is before the court, there is much greater propriety in receiving testimony from jurymen, than when such evidence is offered to reverse the record of a common law verdict, rendered in open court, and solemnly affirmed and recorded in the presence of the jury. Second, in the case referred to, all the jurymen united in their testimony that a clerical mistake had been made, and there was no controversy or room for doubt on the subject.   Without questioning that decision, we think it affords no ground for departing from the general rule in the present instance.

*Exceptions overruled.*[*]

---

[*] A similar decision upon the constitutionality and construction of the St. of 1865, c. 230, was made in the case from Middlesex of INHABITANTS OF WAT-

LAND *vs.* INHABITANTS OF WARE, submitted on briefs, January 28, 1868, at Boston, by *G. A. Somerby,* for the plaintiffs, and *D. S. & G. F. Richardson & F D. Richards,* for the defendants, and passed upon by the same judges before whom the case of *Inhabitants of Bridgewater* v. *Inhabitants of Plymouth* was reargued on March 30, 1868.