INHABITANTS OF APPLETON *vs.* CITY OF BELFAST.

Knox.   Decided February 19, 1878.

*Evidence.   Pauper.*

In a case between towns, upon an issue whether a pauper had a settlement in a third town by a residence there on March 21, 1821, testimony is not admissible to show that the latter town furnished supplies to the pauper after that time.

The fact that after the pauper was furnished with supplies by the plaintiffs she recovered a judgment for wages due her at the time from the person with whom she was then living, is not admissible in evidence to show that she was not in distress and need of relief when the supplies were furnished.

The statutory provision, that the settlement of a person shall not be affected by a marriage procured by town agents or officers for the purpose of changing such settlement, applies to all cases where the suit is for supplies furnished after the statute was passed, although the marriage took place before the date of the statute; and the statute is not, on that account, unconstitutional.

ON EXCEPTIONS AND MOTIONS.

ASSUMPSIT for pauper supplies to Augusta Nickerson, alias Campbell, 23 weeks board, from September 23, 1873, and medical aid and clothing, $56.39. At the first trial, the jury did not agree. At the March term, 1876, the verdict was for the plaintiffs, $62.44. The defendants alleged exceptions stated in the opinion, and also moved to set aside the verdict as against evidence and for a new trial on the ground of newly discovered evidence, mainly that of Abigail Campbell, of Pownal, the mother of John Campbell, the pauper's husband, tending to show that on March 21, 1821, she and her husband resided and had their home in Belmont, now Morrill, and that neither of them had received supplies as a pauper within one year before that date.

*D. N. Mortland*, for the defendants.

*A. P. Gould & J. E. Moore*, for the plaintiffs.

PETERS, J. The suit was for supplies furnished by the plaintiffs to Augusta Nickerson. The plaintiffs proved that she had a derivative settlement, under her father, in the city of Belfast. To avoid this proof, the defense relied upon a marriage of the pauper

to John Campbell, contending that his settlement was in the town of Morrill. The plaintiffs then set up that the marriage was procured by fraud upon the part of the agents and officers of Belfast, in order to relieve the city from the liability of supporting the female pauper.

The defendants undertook to show that John Campbell had a settlement in Morrill derived from his father Robert Campbell, and that Robert had his settlement there by a residence upon the territory of that town on March 21, 1821. The defendants complain of the exclusion of evidence going to show that in 1852, Robert was living in Belmont (now Morrill), and that in that year the town supplied his wife to some extent as a pauper. The testimony offered was immaterial. The contention was admitted to be whether or not Robert resided there in 1821; it mattered not where he resided in 1852. And if the fact, that the town rendered assistance to Robert's wife during the latter year, was any admission by them that her husband resided there in 1821, it was not an admission the correctness of which the plaintiffs in this suit were called upon to disprove or explain.

The proof of the recovery by the pauper of a small judgment for wages against the person with whom she was living in Appleton, was properly excluded. The defendants were not, however, precluded from showing, as matter of fact, any property or claims she had from which anything could be realized, as bearing upon her poverty or distress at the time the supplies were furnished. To show that she afterwards recovered such a judgment would involve too many questions foreign to the issue, to render such a mode of proving the fact of her wants admissible.

This disposes of all the exceptions taken that are now relied on, save the ruling as to the effect of the alleged fraudulent and collusive marriage. Here, too, we think the ruling was right. The provision of the statute is this: "When it appears in a suit between towns involving the settlement of a pauper, that a marriage was procured to change it by the agency or collusion of the officers of either town, or any person having charge of such pauper under authority of either town, the settlement is not affected by such marriage." The marriage was before the statute (in its

present form) was passed. The supplies were furnished after the date of the statute. The instruction was that the statute would apply to a case like the present, if the proof warranted it.

We have no doubt, that the statute was intended by its terms to apply to any and all future causes of action, whether such marriages existed at the date of the passing of the statute or not. No other construction would be so sensible or satisfactory.

This effect gives the statute really a prospective and not a retrospective operation. It is aimed at fraud in future causes of action, although the fraud may have been previously concocted. Nor do we doubt the constitutionality of the statute as applying to already existing marriages. It affects no contract or anything of the nature of a contract, or any vested right. The legislature have the right to prescribe what may constitute a settlement, or, within reasonable limits, what shall be evidence of a settlement, and may alter the law upon the subject from time to time. They may declare that marriages shall confer settlements or the reverse of it, and upon what conditions it may be so. The burdens thus imposed are deemed to be of a general character, upon an average and in the long run operating with equal fairness upon all the cities and towns in the state. Were it not so, then all the original pauper laws passed in 1821, when we commenced to legislate as a state, might have been challenged for their unconstitutional tendency and effect, for in many instances they changed settlements of inhabitants as already existing and transferred them from one town to another, but by fixed and general rules.

This view of the law is, we think, directly and precisely maintained in an early case in this state. *Lewiston* v. *North Yarmouth*, 5 Maine, 66. It was there decided, that a legislative resolve, rendering valid a certain class of marriages, so far as it had a bearing upon questions of settlement under the pauper laws, for expenses incurred subsequent to its passage, was constitutional. Here the result is just reversed. Here a valid marriage is rendered invalid for a certain purpose. There, an invalid marriage was held valid for a certain purpose. The point involved in each case is the same. The same principle was enunciated in *Brunswick* v. *Litchfield*, 2 Maine, 28. So it is admitted in

*Goshen* v. *Stonington*, 4 Conn. 209. And strongly asserted in several Massachusetts cases. *Goshen* v. *Richmond*, 4 Allen, 458. *Monson* v. *Palmer*, 8 Allen, 551. *Bridgewater* v. *Plymouth*, 97 Mass. 382, 390.

Upon the motions, we think the verdict should not be disturbed. No doubt, the evidence alleged to be newly discovered is important; but, with any sort of reasonable diligence, it could have been known before.

*Exceptions and motions overruled.*

APPLETON, C. J., WALTON, BARROWS and DANFORTH, JJ., concurred.

DICKERSON, J., did not sit.