CHARLES ENDICOTT *vs.* INHABITANTS OF HOPKINTON.

Middlesex. Jan. 9. — Oct. 17, 1878. AMES & LORD, JJ., absent.

In action for the support of a pauper, it appeared that the husband of the pauper resided on a freehold estate in the defendant town from January, 1863, to January, 1868; that during the whole of this period he was more than twenty-one years of age; that he was an alien until November, 1864, when he became a naturalized citizen; that in May, 1867, his wife became an insane pauper, and was with his consent committed to the State Lunatic Hospital; and that in January, 1868, he ceased to be a resident of the defendant town. *Held,* that, by the St. of 1868, *c.* 328, § 1, as amended by the St. of 1871, *c.* 379, § 1, the husband of the pauper acquired a settlement in the defendant town.

The St. of 1868, *c.* 328, § 1, as amended by the St. of 1871, *c.* 379, § 1, relating to the settlement of paupers, is constitutional.

CONTRACT by the treasurer of the Commonwealth for the amount paid by the Commonwealth to the State Lunatic Hospital at Northampton, for the support of Bridget Sheehan, an insane pauper. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, on an agreed statement of facts, the material parts of which appear in the opinion.

*W. C. Loring,* Assistant Attorney General, ( *C. R. Train,* Attorney General, with him,) for the plaintiff.

*J. G. Abbott,* for the defendant.

COLT, J. This action is brought to recover for the support of an insane pauper whose settlement is claimed to be in Hopkinton. The only question is, whether Thomas Sheehan, the husband of the pauper, gained a settlement in that town, where he resided on a freehold estate from 1863 to 1868, being over twenty-one years of age. He was an alien until November, 1864, when he became a naturalized citizen. In May, 1867, his wife became an insane pauper and was with his consent committed to the state hospital. In January, 1868, he ceased to be a resident of Hopkinton. Thus it appears that for nearly all of the first two of the five years' residence he was an alien, and for the last two years or more, he was receiving aid as a pauper.

Under the Gen. Sts. *c.* 69 § 1, *cl.* 4, a settlement by living on a freehold estate for three successive years could be acquired only by a citizen of one of the United States. And, under the decisions of this court, the assistance received by him through

his wife as a pauper in May, 1867, terminated the effect to be given to his residence after that time.  *Charlestown* v. *Groveland*, 15 Gray, 15.  *Woodward* v. *Worcester*, 15 Gray, 19, note. *West Newbury* v. *Bradford*, 3 Met. 428.

If the General Statutes had been in force, Sheehan could not have acquired a settlement because there was not three successive years' occupancy of the freehold as a citizen, without aid as a pauper.  But by the St. of 1871, *c.* 379, amending the St. of 1868, *c.* 328, it is provided that thereafter any person having the qualifications named in the fourth clause, (which is the clause providing for the gaining of a settlement in the mode we are considering,) shall be deemed to have thereby gained a settlement, although not a citizen of any of the United States, " whether such other qualifications shall have been acquired before or after the enactment hereof."

The manifest purpose of these last acts is to remove all disability, arising from alienage, from one who, under the former provisions of law, but for the disability, would have acquired a settlement.  As to the right to take, hold, transmit, and convey real estate, aliens and citizens had long enjoyed equal privileges under our statutes; Gen. Sts. *c.* 90, § 38; and there is no good reason why they should not stand on an equal footing in respect to the modes of acquiring a settlement.  It would be a narrow construction to hold, that the benefits of the acts in question are confined to those, who, before their passage, had, while aliens, completed three years' ownership and occupation of a freehold, and do not enure to those who, without removing from their estates, become citizens before the end of that time and then complete the occupation.  The conclusion is, that the settlement of Sheehan under these acts is established in Hopkinton.

The statutes do not violate any constitutional provision, whether they are regarded as passed in the exercise of the right to regulate a complicated part of the internal police of the Commonwealth, or in the exercise of the right to impose reasonable assessments, rates and taxes.  It is clearly within the power of the Legislature to charge upon the towns and cities the support of the poor; distributing the burden by general laws applicable alike to all, and based upon benefits derived from previous residence, payment of taxes, occupancy and ownership of land, mil-

itary or official service, and the like. The rules of settlement are frequently, perhaps too frequently, changed, so as to impose new and unexpected burdens on the towns. Of the wisdom of such changes the Legislature must alone judge. It is enough for us, when they are called in question in any case, to declare that they impair or do not impair vested constitutional rights. Sts. 1870, *c.* 392; 1872, *c.* 280. *Bridgewater* v. *Plymouth,* 97 Mass. 382. *Goshen* v. *Richmond,* 4 Allen, 458.

*Judgment affirmed.*