INHABITANTS OF AGAWAM & another *vs.* COUNTY OF HAMPDEN.

Hampden.   Oct. 7, 1880; Feb. 25. — April 9, 1881.   COLT, J., absent.

The Legislature may authorize and require a county or a town to raise and appropriate money for any public use within its limits, or for the reimbursement of money already paid for such a use.

A statute authorized county commissioners to lay out and build a bridge across a river between a city and a town, and to file a report of the cost in the office of the clerk of this court; directed the court to appoint commissioners to determine what cities and towns in the county were or would be specially benefited by the bridge, and what proportions of the cost should be paid by those cities and towns respectively ; and provided that their award, when returned to the court, and judgment entered thereon, should be binding upon all parties interested.   After the bridge was built, and a report of the cost filed, commissioners were appointed, and made an award, upon which judgment was entered, determining that the city and town between which the bridge was built should pay the county the whole cost of the bridge in certain proportions.   A subsequent statute provided that this court should appoint commissioners to determine and report the amount of special benefit which the said city and town received from the bridge, and, if they should find that such special benefit did not equal the cost of the bridge, as appearing by the report on file, to determine that the county should pay to the city and town the amount that each had paid in excess of the benefit received therefrom.   *Held,* that this statute was constitutional.

If a statute authorizes a court, upon application being made, to appoint commissioners within a certain time from the passage of the act, the appointment may be made after that time, *nunc pro tunc,* upon an application made and entertained by the court within the time limited.

GRAY, C. J.   By the St. of 1873, *c.* 200, the county commissioners of Hampden county were authorized to lay out and construct a highway and bridge across the Connecticut River between the city of Springfield and the town of Agawam, and to estimate and award damages thereby occasioned in the same

manner as provided by the general laws in the case of laying
out highways; and were directed, when such bridge and high-
way were completed, and the full cost thereof ascertained, in-
cluding all land damages, to file a report of the fact, together
with the amount of such cost, in the office of the clerk of this
court; and the court, upon the application of the county com-
missioners or of any party interested, was to appoint a board of
three commissioners to determine, after due notice to all the
parties interested and a hearing, what cities and towns in the
county of Hampden were or would be specially benefited by
the laying out and construction of this bridge and highway, and
what proportions of the cost aforesaid, and of the expenses of
keeping the bridge in repair, should be paid by those cities and
towns respectively; and their determination in writing, when
reported to and accepted by the court and judgment entered
thereon, was to be binding upon all the parties interested
therein.

The bridge was accordingly built, and a report filed by the
county commissioners, showing the cost thereof to have been
$112,752.83; and, on their application, commissioners were ap-
pointed by this court, under the St. of 1873, *c.* 200, who, after
notice to all the cities and towns in the county of Hampden,
and hearing all of them desiring to be heard, determined that
the town of Agawam should pay to the county of Hampden
$39,463.50, being thirty-five per cent of that cost, and the city
of Springfield should pay to the county $73,289.33, being sixty-
five per cent thereof, and that said city and town should main-
tain and keep the bridge in repair, and pay the expenses thereof
in the same proportions; and at September term 1879 that award
was accepted and judgment rendered thereon.

The St. of 1880, *c.* 236, passed April 23, 1880, provides that,
" at any time within six months from the passage hereof," this
court, " upon the written application of the city of Springfield
or town of Agawam, shall appoint " three commissioners to de-
termine, after due notice to all parties interested and a hearing,
the amount of special benefit that this city and town receive
from the bridge constructed under the provisions of the St. of
1873, *c.* 200; and, if they find that such benefits do not equal
the cost of the bridge as appearing in the report of the county

commissioners on file, then to determine that the county of Hampden shall pay to said city and town the amount that each has paid, or become liable for, on account of the construction of the bridge, in excess of the benefit it receives therefrom; and that their determination, when reported in writing to and accepted by the court and judgment entered thereon, shall be binding upon all parties interested therein.

A petition having been presented to this court, within six months from the passage of the statute, by the town of Agawam and the city of Springfield, for the appointment of such commissioners, the county of Hampden objected that the statute was unconstitutional and void; and the question of its constitutionality was reserved for the determination of the full court, according to whose opinion thereon commissioners are to be appointed or the petition dismissed.

The counties, towns and cities, into which the Commonwealth is divided, are strictly public corporations, established for the convenient administration of government; their municipal powers and duties are not created and regulated by contract, express or implied, but by acts passed by the Legislature from time to time, according to its judgment of what the interests of the public require; and they have not the same rights to judicial trial and determination, in regard to the obligations imposed upon them, as other corporations and individuals have. *Freeland* v. *Hastings*, 10 Allen, 570, 579, 580. *Rawson* v. *Spencer*, 113 Mass. 40, 45. *Stone* v. *Charlestown*, 114 Mass. 214, 223, 224. *Coolidge* v. *Brookline*, 114 Mass. 592, 596, 597. *Hill* v. *Boston*, 122 Mass. 344, 349, 355–357. *Laramie* v. *Albany*, 92 U. S. 307. *Tippecanoe Commissioners* v. *Lucas*, 93 U. S. 108, 114. *New Orleans* v. *Clark*, 95 U. S. 644, 654.

It is accordingly well settled that the Legislature may enact that a particular road or bridge shall be a public highway, or may direct it to be laid out as such by county commissioners, and, in either case, may order the cost thereof, including the compensation to be made to owners of land, or to corporations by which the way or bridge has been previously laid out as a turnpike or toll-bridge under a legislative charter, as well as the cost of maintaining it and keeping it in repair, to be paid, either by the Commonwealth, or by the counties, cities or towns in

which it lies, or which may be determined, by commissioners appointed for the purpose by the courts, to be specially benefited thereby. *Norwich* v. *County Commissioners*, 13 Pick. 60. *Attorney General* v. *Cambridge*, 16 Gray, 247. *Hingham & Quincy Bridge* v. *Norfolk*, 6 Allen, 353. *Salem Turnpike* v. *Essex*, 100 Mass. 282. *Haverhill Bridge* v. *County Commissioners*, 103 Mass. 120. *Carter* v. *Cambridge & Brookline Bridge*, 104 Mass. 236. *Scituate* v. *Weymouth*, 108 Mass. 128. *Northampton Bridge Case*, 116 Mass. 442. *Brayton* v. *Fall River*, 124 Mass. 95.

In *Attorney General* v. *Cambridge*, this court upheld the validity of the St. of 1860, *c.* 95, by which a bridge, originally built under authority of the General Court of the Colony, and used for two hundred years as a public way, during which period the Legislature had from time to time imposed upon various towns the expenses of keeping it in repair, was authorized to be laid out by the county commissioners as a public highway, and maintained like other county ways, and some of the towns were released from the obligation to maintain it imposed by previous statutes.

In *Scituate* v. *Weymouth*, it was held that, after the Legislature had laid out a turnpike and toll-bridge as a public highway, and imposed the expenses of repairing and maintaining it upon such towns as commissioners appointed by this court should determine to be specially benefited, and the award of such commissioners, determining that seven towns named were so benefited, and should bear such expenses in certain proportions, had been accepted by the court, a subsequent Legislature might enact that such expenses for the future should be borne by such towns as commissioners appointed by the Governor should determine to be benefited; and that the award of commissioners so appointed, determining that the whole of such expenses for the future should be borne by three of those towns only, was valid.

The respondent nevertheless contends that, after a bridge has once been laid out and built, and the cost thereof assessed upon and paid by certain towns, under an award made by commissioners and accepted by this court, pursuant to an act of the Legislature, it is not within the power of a subsequent Legislature to provide for the reimbursement to those towns by another municipal corporation of the sums so paid, or any part thereof.

In support of this proposition, the respondent mainly relies on the case of *Hampshire* v. *Franklin*, 16 Mass. 76. That case arose in this way: By the St. of 1811, *c.* 61, passed June 24, and which took effect December 2, 1811, the county of Hampshire was divided, and the northerly part thereof made the county of Franklin; and it was enacted that the jurisdiction of this court held at Northampton in Hampshire should extend to both counties, and the jurors should be drawn from the two counties as before. After that statute took effect, actions arising in Franklin were accordingly tried at the court in Hampshire, jurors were drawn as aforesaid, and were paid out of the treasury of Hampshire, and the proportion of the amount so paid, chargeable upon and remaining due from Franklin, if that county was by law liable to pay the same, was the sum of $490.24, for the recovery of which the action was brought.

There was no provision, in the statute of 1811, requiring a division of the money in the treasury of Hampshire, or of debts and taxes due to that county, or a payment of any part thereof to the county of Franklin. But by the St. of 1812, *c.* 124, passed February 27, 1813, it was enacted that the county of Franklin should be entitled to and should receive such proportion of all the moneys and credits of the county of Hampshire at the time when the statute of 1811 took effect, which remained after payment of the debts then due from Hampshire, as the amount assessed upon the several towns in Franklin, in the last county tax before the division, bore to the whole assessment; that commissioners should be appointed by the two counties to ascertain and adjust the amount according to this proportion; and that, so long as the court should continue to be held at Northampton for both counties, Franklin should bear one third of the expense of jurors. Pursuant to this act, the courts of sessions of the two counties (having the powers since vested in county commissioners) appointed commissioners, who found that the amount so due from Hampshire to Franklin, if the latter had by law the right to demand and receive the same, was $1311.84. It was agreed that the demand of Franklin for this sum should be considered as if duly filed by way of set-off.

The court expressed an opinion that the provision of the statute of 1812, requiring the payment to Franklin of a proportion

of the money in the treasury of or due to Hampshire when the statute of 1811 took effect, had no operation *ex vigore suo*, because its object and effect were to require Hampshire to pay money out of its treasury, which by the preceding laws belonged to it, to Franklin; but held that the county of Hampshire, by appointing through its court of sessions a commissioner under the statute of 1812 to ascertain and adjust the proportion of that money due to Franklin, and by bringing suit under this statute against Franklin for a proportion of the amount paid by Hampshire for jurors, which it could not otherwise have recovered, had assented to and adopted this statute; and therefore the county of Franklin was entitled to judgment for the sum due under it, deducting the amount due to Hampshire for jurors' fees.

Upŏn that case it is to be observed: 1st. The judgment upon the facts before the court being in favor of Franklin, the opinion expressed that in a different state of facts Franklin could not have enforced its claim was *obiter dictum.* 2d. It was assumed, without discussion, that municipal corporations were no more subject to the control of the Legislature in this regard than other corporations or individuals. 3d. The question under consideration was of requiring money, which the old county actually had in its treasury or had become entitled to before the new county was set off, and all equitable claims to which were presumed to have been considered and adjusted by the previous Legislature in the act dividing the old county, to be paid to the new county; not of requiring a county to reimburse towns for the cost of constructing a permanent public highway within the limits of both.

In *Norwich* v. *County Commissioners*, 13 Pick. 60, the court upheld the validity of an act of the Legislature providing that half the expense of rebuilding a particular bridge should be borne by the county, when by the operation of the general laws of the Commonwealth the whole expense would be borne by the town in which it was situated; and Chief Justice Shaw said: " This case is clearly distinguishable from that, cited in the argument, of *Hampshire* v. *Franklin*, 16 Mass. 76. There the right to the money in the treasury had actually become vested in the county of Hampshire; and the effect of the legislative act was,

in so many terms, to provide that a portion of the money of one county, actually in its treasury, should be paid over to another, in obvious violation of vested rights. But even in that case, it appearing that the court of sessions had assented to the act, and they being regarded, for that purpose, as the agents of the county, it was held that the act was rendered valid by that assent."

The decisions of this court, cited for the respondent, as to liability for the support of paupers, turn upon questions of the construction of statutes, not of the power of the Legislature, and treat the constitutionality of an enactment that one town shall reimburse another for supplies furnished before its passage as an open question. *Medford* v. *Learned*, 16 Mass. 215. *Goshen* v. *Richmond*, 4 Allen, 458, 461. *Monson* v. *Palmer*, 8 Allen, 551, 557. *Bridgewater* v. *Plymouth*, 97 Mass. 382, 390. *Endicott* v. *Hopkinton*, 125 Mass. 521. The only suggestion, in any of them, of the invalidity of a retrospective statute is in *Medford* v. *Learned*, which was an action against an individual, and in which Chief Justice Parker said that "no legislator could have entertained the opinion that a citizen, free of debt by the laws of the land, could be made a debtor merely by a legislative act declaring him one."

In *Whitney* v. *Stow*, 111 Mass. 368, the point decided was that a statute imposing upon towns the debts of their school districts abolished by a previous act of the same Legislature was constitutional; and no opinion was required or expressed upon the question whether a subsequent Legislature would have the same power.

The principles which must govern this case are clearly brought out in the decisions relating to the raising of money by taxation for the support of soldiers. The raising and support of soldiers for the defence of the government, though not a municipal duty, and therefore not an object for which towns can raise or pay money without authority from the Legislature, is yet a public duty, for the performance of which the Legislature may itself raise money, or may authorize and require towns to raise money by taxation, or may confirm and ratify past votes of towns for that end. *Stetson* v. *Kempton*, 13 Mass. 272, 279. *Fowler* v. *Selectmen of Danvers*, 8 Allen, 80. *Lowell* v. *Oliver*, 8 Allen,

247. *Freeland* v. *Hastings*, 10 Allen, 570. *Grover* v. *Pembroke*, 11 Allen, 88.

In *Lowell* v. *Oliver*, the St. of 1863, *c.* 218, for reimbursing moneys already paid by towns and cities as bounties to volunteers enlisted and mustered into the military service, and for assessing a tax for the amount thereof upon all the towns and cities of the Commonwealth, was held to be a valid exercise of the power of the Legislature to impose and levy taxes for the public service and the necessary defence and support of the government; and Chief Justice Bigelow, in delivering judgment, said: " If the object of the appropriation is a legitimate one, it is quite immaterial whether the money has been actually expended and the tax is laid to pay a debt previously incurred, or for the reimbursement of sums advanced by third persons for a public object, or whether it is to anticipate expenditures which the future requirements of the public service may render expedient or necessary. We can see no valid distinction in principle between a right to raise money for a specific object yet to be accomplished, and a right to raise it to defray the expense of the same object after it has been attained." 8 Allen, 257.

In *Freeland* v. *Hastings*, it was held that the St. of 1865, *c.* 152, authorizing any town or city to raise and appropriate money to refund sums already contributed by individuals for the purpose of filling its quotas or furnishing soldiers, was constitutional, and authorized a town to raise money by taxation for the purpose of repaying to private citizens sums previously contributed by them to a common fund to enable the town to furnish its quota of troops by the payment of bounties to volunteers; and Chief Justice Bigelow, in a clear and exhaustive discussion of the question, said: " It is competent for the Legislature to impose on towns the burden of performing certain duties of a public nature, which primarily devolve on the State, and for the due execution and fulfilment of which it is incumbent on the Legislature to provide." " Familiar instances of such delegation of power are found in the laws providing for and regulating the construction and maintenance of roads and bridges, the support of paupers, and the establishment and support of public schools." 8 Allen, 579, 580. " Not only was the payment of bounties by the Commonwealth and by cities and towns for the purpose of

procuring volunteers a proper and legitimate object of expendi-
ture of public money, raised or to be raised by taxation, but also
money contributed voluntarily by individuals to raise a fund for
the same purpose may well have been considered by the Legisla-
ture as an advancement of money for a public object." "No
private right is invaded, and no constitutional barrier over-
stepped, in giving authority to cities and towns to raise money
by taxation to reimburse individuals for contributions made in
aid of an object of a public or municipal nature; or, in other
words, as it is competent for the Legislature to authorize the
imposition of taxes to raise money to be expended for a public
purpose, so it is competent for them to sanction an expenditure
already made for a like object, and to give authority for its re-
payment by means of taxation." "The money which the stat-
ute authorized towns to repay by means of taxation was raised
and contributed for a public object. This seems to us not only
to constitute a test by which the validity of the statute is proved,
but also a safe limit by which the power of the Legislature to
authorize taxation for repayments or reimbursements of money ad-
vanced without legislative sanction may be restrained." 8 Allen,
585-587.

The lawfulness of the exercise of the right of taxation for
any object of a public nature is also clearly recognized in *Lowell*
v. *Boston*, 111 Mass. 454, and in *Loan Association* v. *Topeka*, 20
Wall. 655. The cases in the courts of other States, cited in the
able and learned arguments of counsel, have been examined, but
it is unnecessary to refer to them particularly, because our own
decisions conclusively establish that the Legislature may author-
ize and require a county or a town to raise and appropriate
money for any public use within its limits, or for the reimburse-
ment of money already paid for such a use.

An act of the Legislature, requiring the Commonwealth, or
the county in which a bridge built and maintained for the use
of the public is situated, to reimburse to particular towns sums
already paid by them pursuant to law for its construction, is
open to no graver constitutional objection than the statutes
already referred to, requiring an existing turnpike or toll-bridge
to be laid out as a public highway, and counties, cities and towns
to pay sums of money to the corporation by which it has been

previously constructed or maintained; or requiring all the cities and towns of the Commonwealth to contribute to the reimbursement of sums expended for a public object by particular cities and towns without previous authority of law; or empowering towns to raise and appropriate money to repay sums which have been voluntarily subscribed by private citizens for public purposes.

The bridge between Agawam and Springfield is a public highway, laid out by the county commissioners under the special authority conferred by the St. of 1873, *c.* 200. The sums paid by the town of Agawam and the city of Springfield were assessed upon them, pursuant to that statute, by an award of commissioners appointed for the purpose, confirmed by a judgment of this court. That judgment determined two things: 1st. By what towns or cities, and in what proportions, the original cost and expense of constructing the bridge, including land damages, should be paid. 2d. By what towns or cities, and in what proportions, the expense should be borne of maintaining the bridge and keeping it in repair for the future.

'The questions submitted to the determination of the commissioners appointed under that statute were, what cities and towns in the county of Hampden were or would be specially benefited by the laying out and construction of the bridge, and what proportions of the costs and expenses of its construction and of its maintenance and repair should be paid by such cities and towns. The question to be determined under the St. of 1880, *c.* 236, is not of the comparative proportion of the special benefits received by such cities and towns, but whether the amount of such special benefits equals the cost of the bridge; if it does not, the excess is to be paid by the county. This question was not submitted to the determination of the commissioners under the St. of 1873, *c.* 200.

The omission, in the proceedings under that statute, to assess upon the county of Hampden any part of the cost of the bridge was not by reason of any adjudication by the commissioners or by the court that the county should not be so assessed; but because the Legislature, by that statute, had not authorized any such assessment, but had required the whole cost to be paid by the cities and towns specially benefited by the bridge. This is

manifest upon an examination of the provisions of the statute. Section 1 merely authorizes the county commissioners to lay out the bridge, and to adjudicate on the necessity of constructing it, after giving notice as in the case of laying out highways. Section 2 merely regulates the manner of estimating and awarding damages occasioned by the laying out. But by § 3 "all expenses incurred under this act, including all expense of maintaining and keeping said bridge in repair, shall be paid by such parties and in such proportions as shall be determined under the following provisions." And the only parties named in the subsequent provisions of the statute are those cities and towns in the county of Hampden which are or will be specially benefited by the laying out and construction of the bridge; and they were to pay the original cost, and the expenses of maintaining and keeping in repair, in such proportions as the commissioners appointed by this court under that statute should determine.

The judgment, so far as regarded the payment of the original cost of the bridge, was necessarily in the form of a judgment that the county of Hampden should recover against the town of Agawam and the city of Springfield respectively certain sums of money. But the Legislature is no more precluded thereby from afterwards requiring the county to reimburse to that town and that city a portion of that cost, than if the amounts so paid by them in the first instance had been ascertained by agreement of the parties, or fixed by the Legislature in the statute itself. A subsequent statute transferring to the county the burden of the future maintenance of the bridge, notwithstanding that judgment, would be constitutional, within the decision in *Scituate* v. *Weymouth*, before cited. As to the cost of the original construction, that judgment only determined by what cities and towns, and in what proportions, it should be paid in the first instance. There is nothing in the judgment, nor in the statute under which it was rendered, to limit the power of the Legislature to enact that the Commonwealth or the county shall raise and appropriate money for the payment of expenses incurred, whether in the past or in the future, for the public benefit.

The St. of 1880, *c.* 236, is within the power vested in the Legislature by the Constitution; and all questions of the justice

or expediency of the exercise of that power must be determined by the Legislature, and not by the courts.

Whether the limitation of six months from the passage of the statute, already quoted in stating the case at the beginning of this opinion, has regard to the judgment appointing commissioners, or to the application for such appointment, need not be considered, because, the application having been made by the petitioners and entertained by the court within the six months, it is clearly within our power to prevent it from being defeated by the lapse of time necessary for its judicial consideration, and to order judgment to be entered as of the day when the case was heard and reserved for our determination. *Springfield* v. *Worcester*, 2 Cush. 52. *Martin* v. *Tapley*, 119 Mass. 116, 120, and cases cited. *Mitchell* v. *Overman*, 103 U. S. 62.

*Commissioners appointed nunc pro tunc.*

*G. D. Robinson & E. B. Maynard*, for the town of Agawam, and *M. P. Knowlton & T. M. Brown*, for the city of Springfield, in addition to some of the cases cited in the opinion, cited Dwarris on Sts. (Potter's ed.) 417; Cooley Const. Lim. (4th ed.) 283, 460; Story on Const. U. S. § 1398; Dillon Mun. Corp. § 23; *Baltimore & Susquehanna Railroad* v. *Nesbit*, 10 How. 395; *Bridgeport* v. *Housatonic Railroad*, 15 Conn. 475; *Guilford* v. *Chenango Supervisors*, 3 Kernan, 143; *Philadelphia* v. *Field*, 58 Penn. St. 320; *Lycoming* v. *Union*, 15 Penn. St. 166; *Dunmore's appeal*, 52 Penn. St. 374; *Burns* v. *Clarion*, 62 Penn. St. 422.

*N. A. Leonard & G. Wells*, for the respondent, further cited *Brunswick* v. *Litchfield*, 2 Greenl. 28; *North Yarmouth* v. *Skillings*, 45 Maine, 133; *Towle* v. *Eastern Railroad*, 18 N. H. 547; *Pembroke* v. *Epsom*, 44 N. H. 113; *Atkins* v. *Randolph*, 31 Vt. 226; *Wahlschlager* v. *Liberty*, 23 Wis. 362; *State* v. *Tappan*, 29 Wis. 664; *Hasbrouck* v. *Milwaukie*, 13 Wis. 37; *Jackson* v. *La Crosse*, 13 Wis. 490.