INHABITANTS OF LUNENBURG *vs.* INHABITANTS OF SHIRLEY.

Worcester. October 7, 1881; March 30. — April 12, 1882.

A person was mustered into the military service of the United States during the civil war as part of the quota of a town in this Commonwealth; and became a deserter from such service with no intention of returning thereto. Subsequently he surrendered himself as a deserter under a proclamation of the President of the United States, and was honorably discharged as a surrendered deserter. *Held,* on the issue whether he had " duly served " one year, within the St. of 1878, *c.* 190, § 1, *cl.* 10, so as to entitle him to a settlement in the town of whose quota he was a part, that the time he was absent as a deserter was to be excluded.

DEVENS, J. By this action the plaintiff seeks to charge the defendant with sums expended for the support of the wife and children of Peter Smith, on August 4, 1878. Smith served as a part of the defendant's quota during the civil war, and the plaintiff contends that he acquired a settlement in the defendant town by virtue of the St. of 1878, *c.* 190, § 1, *cl.* 10.

That statute provides that a soldier duly enlisted and mustered as a part of the quota of a town, who " shall have duly served for not less than one year," or shall have died or become disabled in the service, or while a prisoner in the hands of the enemy, shall be deemed to have gained a settlement in said town; but that these provisions shall not apply to men receiving second bounties in certain cases, nor to men " who shall have been proved guilty of wilful desertion, or to have left the service otherwise than by reason of disability or an honorable discharge."

It is contended that Smith never fulfilled the first requirement of the statute, in that he never duly served a year. Upon this part of the case, the facts as found by the court are as follows: Smith was mustered into service, as a part of the quota of the defendant town, on August 18, 1863, and served with his company in the Ninth Regiment Massachusetts Volunteer Infantry, until the expiration of a furlough granted to him, which expired on July 12, 1864. On that day, Smith was in Canada, and became then in fact a deserter from said regiment, remaining in Canada, except during one or two brief excursions into the State of Vermont, where he was not known or recognized.

On April 20, 1865, he surrendered himself at Fort Independence, Boston. Harbor, as a deserter, under the proclamation of the President of the United States of March 11, 1865 (13 U. S. Sts. at Large, 752), relating to deserters from the military service of the United States, and there remained doing no military service until May 15, 1865, when he was honorably discharged as a surrendered deserter. There was no evidence that by court martial or otherwise Smith had been formally adjudged a deserter.

More than a year elapsed between Smith's muster into service and his discharge therefrom. But it will be observed that, if the time be computed from the date of his muster, August 18, 1863, to the expiration of his furlough, July 12, 1864, it makes a period of three hundred and twenty-eight days, and if to this time be added the time from his surrender to the date of his discharge, May 15, 1865, which would be twenty-five days, we have in all only three hundred and fifty-three days. As the learned judge who presided found for the plaintiff, it was necessarily held by him that the time which Smith was in fact a deserter was to be computed in determining whether he had " duly served " one year.

As the expenditures for the alleged wife and children of Peter Smith were made on or after August 4, 1878, the liability of the defendant town is to be determined by the provisions of the St. of 1878, *c.* 190, approved April 26, 1878. The Legislature may charge upon the several cities and towns, in any way it deems just, the support of the poor, and there is no constitutional objection to laws which alter the rules of settlement, even if they have the effect to transfer from one town to another the obligation to support individuals who may become entitled to relief as paupers. *Lewiston* v. *North Yarmouth,* 5 Greenl. 66. *Goshen* v. *Richmond,* 4 Allen, 458. *Bridgewater* v. *Plymouth,* 97 Mass. 382. *Endicott* v. *Hopkinton,* 125 Mass. 521.

The legislation in regard to military settlements dates from May 13, 1865, and is the St. of 1865, *c.* 230. The Rebellion had then substantially closed by the surrender of the last of the Confederate armies on April 26, 1865, although it was more than a year later that the President, by proclamation on August 20, 1866, announced that the insurrection against the national

authority was at an end, and that "peace, order and tranquillity" then existed "in and throughout the whole of the United States of America." 14 U. S. Sts. at Large, 814. *McElrath* v. *United States*, 102 U. S. 426.

The operation of this legislation was to confer the privileges of a legal settlement in any city or town upon those soldiers whom it described, who had been eventually credited to it as a part of its quota. *Bridgewater* v. *Plymouth, ubi supra.* Under the St. of 1865, *c.* 230, § 1, such settlement could only be gained by one "who shall have continued in such service" (the military service of the United States) "for a term not less than one year." The St. of 1865, *c.* 230, was modified by provisions in the St. of 1866, *c.* 288, and the St. of 1868, *c.* 328. The St. of 1870, *c.* 392, repealed former statutes, but reënacted them with modifications, and an additional modification thereto was further made by the St. of 1871, *c.* 379. No change was made by any of these statutes in the requirement that the settlement should be gained only by one "who shall have continued in such service for a term not less than one year," until the St. of 1878, *c.* 190, § 1, *cl.* 10, which substituted therefor the words, who "shall have duly served for not less than one year."

That Smith "continued in the service" during the period of his actual desertion is clear. He was all the time amenable to military law. He was liable all the time to arrest and punishment by this law, as administered by a court martial, for all military offences, without any right of appeal to or trial by jury. Notwithstanding his absence, the term of his enlistment was all the time passing away; and, when it had expired, he was out of the service, although he might have failed to perform the duty he was bound by his contract to render. Although under the Articles of War he might be liable, for two years thereafter, to punishment for his desertion, yet from the day his enlistment terminated by its limitation he was under no obligation to render service, unless the same were imposed upon him by sentence of a court martial. 2 U. S. Sts. at Large, 369, art. 88. U. S. Rev. Sts. § 1342, art. 103. 13 Op. Att. Gen. 462–464. By the change in the phraseology of the statute something more was required than mere continuance in the service for the term of one year, in such a manner that the contract of enlistment

endured and the soldier was amenable to military law. In order to show that the soldier duly served for one year, it must be shown that he rendered for that period the service he enlisted for. He could show this by proving actual service, or by proving that he was ready to render it, although he might not have done so by reason of sickness or wounds, or by the fact that he had been taken prisoner, or by any other casualty of a hazardous profession. But when one has absented himself with the intention of not returning, and has thus voluntarily deprived himself of the power of rendering service, he cannot be said to have duly served, even if his misconduct has not availed to extricate him from the duty which he assumed by his contract of enlistment. Admitting, as contended by the plaintiff, that "duly" does not mean "becomingly or properly," but "regularly," he cannot be said thus to serve who puts himself in a position where he can render no service.

If during this period of absence he had duly served, he would be entitled to his pay therefor, as is the soldier in the hospital or in the hands of the enemy. While he could only be deprived by the sentence of a court martial, as a punishment, of the pay which he earned when serving after his return from desertion, he was entitled to no pay while this absence continued, because it had not been earned by service. Without such sentence, it was the duty of the proper officer to see that he was not paid therefor. It was an authorized stoppage, which followed from the violation of his contract of enlistment, which was for faithful service. Army Reg. of 1861, §§ 1327-1332.* Winth. Dig Op. Judge Adv. Gen. 364, 365. 13 Op. Att. Gen. 198. *United States* v. *Landers*, 92 U. S. 77. He cannot be said to have "duly served" during a period when he was by his own contract rightfully deprived of pay for not serving.

A majority of the court are therefore of opinion that it is not shown that Peter Smith duly served for one year.

*Exceptions sustained.*

The case was argued at the bar in October 1881, and was afterwards submitted on briefs to all the judges.

*W. S. B. Hopkins*, for the defendant.

*G. A. Torrey*, for the plaintiff.

---

* In the edition of 1863, these sections are numbered 1357 *& seq.*