ANDREW C. WHEELWRIGHT & others *vs.* CITY OF BOSTON & another.

Suffolk.   March 31, 1905. — June 23, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, & BRALEY, JJ.

*Constitutional Law.   Boston.   Northern Avenue.*

St. 1903, c. 381, authorizing the laying out and construction of Northern Avenue in Boston is not unconstitutional as impairing the obligation of the contract in regard to building an extension of Eastern Avenue in Boston made under authority of St. 1868, c. 326.

St. 1903, c. 381, authorizing the laying out and construction of Northern Avenue in Boston is not unconstitutional as imposing upon that city an expenditure of public money for a private use.

In St. 1903, c. 381, authorizing the laying out and construction of Northern Avenue in Boston, although the provision at the end of § 2, that no compensation, with a certain exception, shall be paid for lands or flats of the Commonwealth or of the city of Boston or of the Boston Wharf Company or of certain railroads within Northern Avenue or Sleeper Street, is unconstitutional and void, it relates to a separate and independent subject and its unconstitutionality does not affect the validity of the rest of the statute.

KNOWLTON, C. J.   This is a petition brought by ten taxpayers of the city of Boston to enjoin the city from proceeding to construct Northern Avenue and a bridge across Fort Point Channel, under the provisions of the St. 1903, c. 381, reserved for our consideration by a single justice of this court. It is contended that the statute is unconstitutional, first, as impairing the obligation of a contract made on June 24, 1873, between the Commonwealth, the city of Boston, the Boston and Albany Railroad Company and the Boston Wharf Company, and secondly,

as imposing upon the city an expenditure of public money for a private use.

We will first consider the contention that the statute impairs the obligation of this contract. The contract was entered into under the authority of St. 1868, c. 326, and it contains elaborate provisions for the filling of flats, the improvement of property, and the construction of streets over land in South Boston, then flowed at high tide. If we assume that the contract was legal and binding in all its parts, the question is, whether there is anything in it that deprived the Commonwealth of the right to make such an enactment in regard to the construction of streets in 1903, as it might have made if no such contract had been executed. We are concerned only with the stipulation of the writing in regard to the construction of bridges and streets. This is a covenant by the city to build an extension of Eastern Avenue, and a bridge across Fort Point Channel, within eighteen months of the date of the writing. But the city was not obliged to do this at a greater cost than the estimate of the city engineer, dated June 15, 1872. The city covenanted that, if it failed to build the bridges and extend the avenues according to the agreement, the Commonwealth might do it, and that the city would pay to the Commonwealth all reasonable expenses which the Commonwealth should incur, not exceeding said estimate of the city engineer. It is agreed that the Commonwealth repeatedly asked the city to do this work. It also is agreed that the cost of doing it would have exceeded the estimate of the city engineer referred to, and therefore the city was not obliged to do it. The Commonwealth never has exercised its option to construct the streets and bridges and be reimbursed by the city for a part of the expense not exceeding the amount of this estimate.

The effect of these covenants, as applied to the facts, was to give the city a right to go on and construct streets and bridges within a reasonable time, although they cost more than the amount of the estimate. But the city was under no obligation to do it. On the city's failure to act, the Commonwealth had an option to go on and build, and be reimbursed in part; but it was not bound to do it. In view of the necessary cost of the work, the contract left no one under any obligation to perform it. Either the city or the Commonwealth might exercise its

option within a reasonable time, but if neither chose to do it, no street could be constructed under the contract. Nearly thirty years having elapsed without action by either party in this direction, these ineffectual provisions of the contract, under which nobody had any rights then enforceable, were no bar to proper action by the authorities in the laying out and construction of streets, such as might have been taken if there had been no contract. There was no statement or suggestion in the writing that these options, if not exercised, should bar other proper measures for the establishment of such streets as might be needed by the public. When the St. 1903, c. 381, was passed, the Legislature had the same right to provide for the construction of streets and bridges in this place that it would have had, under the conditions then existing, if no contract ever had been made.

It is conceded by the petitioners that the Legislature may require the construction of streets and bridges as well by a special act as by general legislation. *Agawam* v. *Hampden*, 130 Mass. 528. *Browne* v. *Turner,* 176 Mass. 9. Their objection to the statute is, that it appears to be enacted solely in the interest of property owners in the neighborhood, and not for the benefit of the public. We think this view of the statute is erroneous. Using the language of the R. L. c. 48, § 1, the Legislature well might find that "common convenience and necessity" required the construction of the street and bridge. It often happens that the interests of property owners in the vicinity are greatly promoted by the laying out of a highway. This fact lies at the foundation of our laws authorizing special taxation in such cases. In determining whether a way should be laid out under the general laws, every holder of real estate should be considered as one of the public, and that part of the public who reside or own property in the neighborhood of the proposed improvement are more directly interested, and therefore more to be considered, than people at a greater distance. When the Commonwealth is a large property owner, the interest of this owner as one of the public is not that of only one person, but is that of the whole public. In determining whether common convenience and necessity require the construction of this work, the Legislature well might consider, among other things, its effect upon the interest of property owners in the vicinity, including in that class all the

people of the Commonwealth, because of their interest in the Commonwealth's flats.

But the validity of the statute does not rest solely or chiefly on this ground. The facts would warrant a finding by the Legislature that this street, which in the petitioner's brief is called a cul-de-sac, was needed to make another connection with the great highways of commerce leading to every part of the habitable globe. It seems probable that, with this avenue open to the public, the cargoes of great ships will soon be carried over it for the benefit of all the people. In our view, this statute, in its leading features, is not different in principle from any special act which requires a municipality to build, for the general public, any other important bridge or highway. It therefore becomes unnecessary to consider the numerous cases which relate to the expenditure of public money for a private use.

In one particular the act goes beyond the constitutional authority of the Legislature. In connection with the provision for compensation for lands taken is this language: " But no compensation for any lands or flats within said avenue or street of the Commonwealth, or of said city, or of the Boston Wharf Company, or of said railroads, except land of said railroads taken for Sleeper Street where the same is fifty feet wide, shall be allowed or paid." This evidently is an incorporation of a part of the contract of June 24, 1873, into this statute. That part of the contract relates only to the proposed construction of the bridge and streets by the city, under the terms of the contract. Inasmuch as that part of the contract was not acted upon, the agreement in regard to the land has not become applicable to any property taken. The agreement does not extend to anything done outside of the contract. In afterwards enacting this independent statute, the Legislature was bound to provide for the compensation of those whose land is taken. Very likely there will be no actual damage to land taken under this statute ; but if there is such damage, it must be paid for under the preceding general provision.

We are of opinion that this unconstitutional language does not render the whole act void, for it relates to a separate and independent subject, seemingly not of great importance, such that the Legislature presumably would have enacted the statute

without hesitation if this provision had not been contained in it. *Edwards* v. *Bruorton*, 184 Mass. 529, and cases there cited.

*Petition dismissed.*

*C. A. Williams*, for the petitioners.
*T. M. Babson*, for the respondents.